John BATES, James Butler, Vincent Gonzalez, Flossie Horsey, Henry Robinson, Antonio Salva, Alan Wayne, Joseph Abrams, and Malachy Lyons, Jr., individually and on behalf of all others similarly situated, Plaintiffs–Appellants,

v.

LONG ISLAND RAILROAD COMPANY, Defendant–Appellee.

No. 1283, Docket 92–9308.

United States Court of Appeals, Second Circuit.

Argued April 30, 1993.

Decided July 2, 1993.

Mark Glen Sokoloff, New York City (Jamie Mercado, of counsel), for plaintiffs-appellants John Bates, James Butler, Vincent Gonzalez, Flossie Horsey, Henry Robinson, Antonio Salva, Alan Wayne, and Joseph Abrams.

Alexander J. Wulwick, New York City, for plaintiff-appellant Malachy Lyons, Jr.

Sharon Patterson Domingo, Jamaica, NY, for defendant-appellee Long Island R.R.

Before: NEWMAN, MAHONEY, Circuit Judges, and EGINTON *, District Judge.

EGINTON, Senior District Judge:

Appellants John Bates, James Butler, Vincent Gonzalez, Flossie Horsey, Henry Robinson, Antonio Salva, Alan Wayne, Joseph Abrams, and Malachy Lyons, Jr. bring this action under § 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 794. They claim that Long Island Rail Road Company ("LIRR") wrongfully terminated them on the basis of their respective disabilities. They further allege that LIRR failed to reasonably accommodate them when it refused to offer them different jobs within their crafts to which they were allegedly entitled under the terms of their respective collective bargaining agreements. All of the appellants were members of unions that were parties to collective bargaining agreements with LIRR, negotiated pursuant to the Railway Labor Act ("RLA"). 45 U.S.C. § 151 et seq. Under each of the relevant collective bargaining agreements, LIRR has the right to summarily terminate employees for non-disciplinary reasons in certain circumstances. For example, an employee who fails to pass a required medical examination may be deemed physically disqualified to perform his job and administratively terminated or transferred to a different position. The collective bargaining agreements clearly provide, however, that an employee may not be transferred when such transfer would bump a more senior employee from his position. Although LIRR's policy is to return injured employees to work as soon as possible after work-related injuries, none of the appellants except Joseph Abrams was reinstated. Because the facts relating to each appellant vary, we address the circumstances of each individual below.

**John Bates**

John Bates, a member of the Sheet Metal Workers International Association ("SMW"), was employed by LIRR as a pipefitter. In December 1981, he injured his left ankle and wrist on the job and quit working on the ground that he was permanently unable to perform his job as a pipefitter. Bates' treating physician and LIRR's Medical Director confirmed that Bates was indeed permanently disabled from performing the duties of a pipefitter.

Subsequently, Bates sued LIRR under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51 et seq., seeking $1,000,000 in damages for his work-related injuries. At the FELA trial, Bates' treating physician testified that Bates' ankle injury would permanently prevent Bates from required walking, climbing, carrying pipes, or standing in one position for any length of time—all essential functions of sheet metal workers. Thus, the doctor concluded that Bates was permanently disabled from his job as a pipefitter and from any other job within his craft. Bates also testified that he could not find an alternative job for which he was physically qualified. Finally, the record reveals that LIRR had attempted to place Bates in a more sedentary job on two occasions but that Bates was physically unable to perform either job because both jobs involved carrying weights.

In 1985, the FELA trial jury awarded Bates $450,000 damages, reduced 50% for his own negligence. Subsequently, LIRR's Medical Director examined Bates and concluded that Bates was permanently disabled from sheet metal work, after which LIRR administratively discharged him. Through the SMW, Bates grieved and arbitrated his termination, but a Public Law Board upheld his discharge on estoppel grounds.

After losing his grievance, Bates filed this action claiming that LIRR discriminated against him by failing to accommodate his disability as required by the Rehabilitation Act. As proof for his discrimination claim, Bates submitted an affidavit which states that a doctor examined him in late 1985 and found him able to perform the essential functions of his job as a pipefitter. Nevertheless, the district court found that this affidavit did not create a genuine issue of fact as to Bates'

---

* Warren W. Eginton, Senior Judge, United States District Court for the District of Connecticut, sitting by designation.

permanently disabled condition at the time of his discharge and granted summary judgment in favor of LIRR.

### James Butler

James Butler was employed by LIRR as a Car Appearance Maintainer ("CAM") and worked as a floor preparer in the Paint Shop. As a CAM, he was a member of the Brotherhood of Railway Carmen of the United States and Canada Queens Lodge 886 ("BRCA").

In 1982, Butler left work on the ground that the dust and fumes in the Paint Shop had aggravated his asthma so severely that he was permanently disabled from continuing his job as a CAM. He rejected LIRR's suggestion that he bid for an alternate position and sued LIRR under FELA seeking $1,000,000 in damages for the aggravation of his asthmatic condition.

At the FELA trial, Butler's treating physician testified that Butler's bronchial asthma had been aggravated by his work environment and was so severe that he was permanently disabled from performing his job in the Paint Shop, even if he wore a mask. The jury awarded Butler $164,000 in damages, including a specific award of $30,000 for future lost wages.

Two months after the verdict, LIRR administratively terminated Butler because he was physically disqualified from performing his job. Through the BRCA, Butler grieved his termination, but his grievance appeal was denied by LIRR. Nevertheless, the BRCA continued to press Butler's grievance until LIRR made a settlement offer to Butler to end the dispute. The BRCA failed to respond to LIRR's settlement offer.

Butler then filed the instant action on the ground that LIRR had violated the Rehabilitation Act by failing to accommodate him by placing him in an alternate position within his craft. In support of his claim, Butler filed an affidavit of his treating physician which stated that Butler could have performed the essential functions of a CAM at the time he was discharged. He also filed an affidavit of the BRCA Chairman stating that Butler could have bid for a position in an open yard at the time of his discharge. Af-

ter reviewing all the evidence, the district court found that these affidavits did not create a genuine issue of fact regarding Butler's permanently disabled condition and granted summary judgment in favor of LIRR.

### Vincent Gonzalez

Vincent Gonzalez, a member of the International Brotherhood of Electrical Workers AFL–CIO Local 589 ("IBEW"), was employed by LIRR as an electrician for 26 years. He retired in 1982 and is collecting two pensions which together almost equal the salary he was earning in his last year of employment.

In 1979, Gonzalez was injured on the job and, subsequently, filed three separate FELA actions against LIRR on the ground that he was permanently disabled from working as an electrician. Two of these actions were discontinued, however, and the third was closed for failure to prosecute. Gonzalez stopped working in October 1979, and retired in November 1982.

Five years after his retirement, Gonzalez filed the instant action claiming that LIRR had discriminated against him because of his disability. The lower court dismissed his claim because Gonzalez failed to file within the applicable three-year statute of limitations.

### Flossie Horsey

Flossie Horsey was employed by LIRR as a CAM and is a member of the BRCA. In 1985, she injured her back on the job and left work on sick leave. During her sick leave, Horsey failed to report to LIRR's Medical Department for required medical exams, failed to offer any explanation for her failure to appear for the exams, and failed to respond to LIRR's written notices inquiring about her absences.

Consequently, LIRR notified Horsey that she would be disciplined for insubordination if she failed to contact LIRR with an explanation. Horsey did not contact LIRR. As a result, disciplinary proceedings were instituted against her. Despite written notice of the disciplinary hearing, Horsey failed to appear at her hearing or offer an explanation for her

absence. When the hearing was rescheduled, Horsey again failed to appear. Thus, she was found guilty of insubordination and dismissed from service.

Through the BRCA, Horsey filed a grievance against LIRR. The grievance was denied by LIRR, but did not progress to a Public Law Board. Subsequently, Horsey filed the instant action claiming that LIRR had discriminated against her because of her disability. The district court dismissed her claim on the ground that she had not been terminated solely because of her handicap.

### Henry Robinson

Henry Robinson was employed by LIRR as a CAM and is a member of the BRCA. In 1978, he injured his back on the job and stopped working on the ground that he was permanently disabled. He then filed a FELA action against LIRR seeking $500,000 in damages. During the FELA trial, Robinson's treating physician testified that Robinson was permanently disabled from performing any job that required lifting or bending— essential functions of his prior job. The jury awarded Robinson $71,000, reduced by 25% for his own negligence.

On the same day as the verdict, Robinson asked to be reinstated. After LIRR advised him to consult the BRCA, Robinson wrote to LIRR's President asking to be placed in a different and more sedentary position. Robinson then visited LIRR's Medical Department seeking authorization to obtain a light duty job, at which time, according to LIRR, he told LIRR's Medical Director that he had lied about his permanent disability in his FELA action.

LIRR decided not to reinstate Robinson, and the BRCA filed a grievance on his behalf. During a three year grievance proceeding according to LIRR, Robinson did not communicate with LIRR, retained several other jobs with different employers, and was arrested for possession of a stolen weapon but convicted of a reduced charge. After three years, the union wrote to LIRR to inquire whether Robinson would be reinstated. LIRR responded that it would not reinstate Robinson.

Subsequently, Robinson filed the instant action claiming LIRR had discriminated against him because of his disability. The court below dismissed his claim on the ground that Robinson had failed to file his claim within the applicable three-year statute of limitations and that the grievance proceeding did not toll the statute of limitations.

### Antonio Salva

Antonio Salva, a member of the BRCA, was employed by LIRR as a CAM. In 1984, he injured his shoulder on the job, went out on sick leave, and has never returned to work. In May 1985, LIRR's Medical Director and another doctor determined that Salva was permanently disabled from overhead lifting activities and therefore unable to perform his former job, LIRR also determined that Salva was not physically able to serve in any job classification for which he held seniority. Thus, LIRR administratively discharged him.

Through the BRCA, Salva filed a grievance against LIRR. A Public Law Board ultimately affirmed Salva's termination. During the course of the grievance proceeding, Salva filed a FELA action against LIRR seeking $5,000,000 in damages for his permanently disabling shoulder injury. This action ultimately was settled.

Subsequently, Salva filed the instant action claiming that LIRR had discriminated against him because of his disability. In support of his claim, Salva submitted an affidavit of his physician. In direct contradiction to prior statements he had made regarding Salva, Salva's physician stated that Salva could sweep, clean, and lift without any restriction at the time he was discharged. The district court found that this affidavit did not create a genuine issue of material fact as to Salva's physically disqualified condition and dismissed his claim.

### Alan Wayne

Alan Wayne was employed by LIRR as a CAM and is a member of the BRCA. In 1982 he fell 5–6 feet to the ground while cleaning a railroad car and severely injured his back. After Wayne's treating physician, LIRR's Medical Director, and a consulting

physician all testified that Wayne suffered chronic pre-existing anxiety and was permanently disabled from performing his former job, LIRR administratively discharged Wayne. Wayne instituted grievance proceedings and, in July 1984, a public law board upheld his termination.

In 1982, Wayne filed a FELA suit against LIRR seeking $750,000 in damages on the ground that he was permanently disabled from performing his former job. Less than a year later, Wayne withdrew this FELA action and instituted a new FELA action seeking $2,000,000 in damages for the same injuries.

In 1987, Wayne filed the instant action claiming that LIRR had discriminated against him because of his disability. The district court dismissed his claim because he failed to file within the applicable three-year statute of limitations.

### Joseph Abrams

Joseph Abrams was employed by LIRR as an electrician and is a member of the IBEW. In 1980, he injured his back on the job, after which he never returned to work, except for three brief periods between November 1980 and September 1982. In 1985, LIRR referred Abrams for Vocational Rehabilitation Counseling and he underwent vocational testing at LIRR's cost, but reported that he could not sit for more than 10–30 minutes at a time. He subsequently declined LIRR's offer of outside placement and applied for a disability pension from the Railroad Retirement Board in 1986.

In 1983, Abrams filed a FELA action against LIRR seeking $3,000,000 in damages for injuries which he claimed permanently disabled him from performing his former job. In a bifurcated trial, the jury returned a verdict on the issue of liability, apportioning 35% to LIRR and 65% to Abrams for his own negligence.

Prior to the trial on damages, LIRR's Medical Department concluded that Abrams was physically unable to perform any job within his craft for which he held seniority. Thus, LIRR administratively discharged Abrams. Through the IBEW, Abrams filed

a grievance against LIRR. After a medical examination ordered by a Public Law Board was conducted, the treating physician concluded that Abrams could return to work but in a less physically demanding capacity. In 1989, the Public Law Board ordered that Abrams, in exchange for a different position, forfeit any rights he had under FELA, and thereafter, LIRR reinstated Abrams with full seniority and back pay.

Abrams then filed this action claiming that LIRR had discriminated against him because of his disability. The court below found that Abrams had received more favorable treatment than required under the Rehabilitation Act and dismissed his claim.

### Malachy Lyons, Jr.

Malachy Lyons, Jr. was employed by LIRR as a track foreman and is a member of the United Transportation Union ("UTU"). In 1983, he was injured on the job. LIRR's consulting physician and Lyons' personal physician disagreed about whether Lyons' condition was permanently disabling. Nevertheless, Lyons returned to work in a more sedentary job, which ultimately aggravated his previous injury and forced him to stop working.

Subsequently, Lyons instituted a FELA action against LIRR. At the FELA trial, Lyons' treating physician testified that Lyons was permanently disabled from physical labor—an essential function of his job as a foreman. The jury made a finding of liability against LIRR, but before there was a verdict on damages, LIRR settled for $98,000.

In 1985, LIRR administratively discharged Lyons on the ground that he was physically disqualified from performing his former job. A Public Law Board affirmed his termination. After the ruling by the Public Law Board, Lyons filed this action claiming that LIRR had discriminated against him because of his disability. In support of his claim, he submitted an affidavit of his treating physician which contradicted the treating physician's FELA trial testimony. The lower court dismissed Lyons' claim under the doctrine of judicial estoppel, holding that Lyons could not take a position in this action that

was inconsistent with his position in his previous FELA action.

## DISCUSSION

### Subject Matter Jurisdiction

■ The threshold issue on appeal is whether the district court lacked subject matter jurisdiction over this action. LIRR contends that because appellants' claims require interpretation of the applicable collective bargaining agreement, they are "minor disputes" under the RLA. Minor disputes must be resolved pursuant to the exclusive dispute resolution procedures outlined in § 3 of the RLA. 45 U.S.C. § 153; *Andrews v. Louisville & Nashville RR*, 406 U.S. 320, 322, 92 S.Ct. 1562, 1564, 32 L.Ed.2d 95 (1972); *Air Line Pilots Ass'n, Int'l v. Trans World Airlines, Inc.*, 713 F.2d 940, 948 (2d Cir.1983), *aff'd in part, rev'd in part on other grounds, Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985).

While it is true that appellants' discriminatory discharge claims may implicate those portions of their collective bargaining agreements that provide for physical disqualification from employment, it is not true that their exclusive remedy for their allegedly wrongful discharges is arbitration. LIRR's reliance on *Gilmer v. Interstate/Johnson Lane Corp.*, —— U.S. ——, ——, 111 S.Ct. 1647, 1650, 114 L.Ed.2d 26 (1991), is misplaced. In *Gilmer*, the Supreme Court held that a claim brought under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, was subject to compulsory arbitration pursuant to an arbitration agreement.

*Gilmer* relied on the Federal Arbitration Act's policy favoring arbitration in determining that Gilmer's statutory civil rights claim was subject to arbitration. *See* Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.* Because the FAA explicitly excludes contracts of railroad employees from its reach, the rationale in *Gilmer* does not apply in this case. *See* 9 U.S.C. § 1. Further, *Gilmer* did not involve a collective bargaining agreement.

Although courts "ordinarily defer to collectively bargained dispute-resolution procedures when the parties' dispute arises out of the collective-bargaining process," there are certain instances when arbitration may be inadequate to protect an employee's rights. *Barrentine v. Arkansas–Best Freight Sys., Inc.*, 450 U.S. 728, 735, 101 S.Ct. 1437, 1442, 67 L.Ed.2d 641 (1981). When an employee's statutory civil rights have been violated, arbitration should not be the sole avenue of protection, unless Congress has so specified.

The Supreme Court in *Alexander v. Gardner–Denver*, 415 U.S. 36, 53–54, 59–60, 94 S.Ct. 1011, 1022–23, 1025, 39 L.Ed.2d 147 (1974), held that an employee who previously had arbitrated his claim of wrongful discharge under the terms set forth in his collective bargaining agreement was not precluded from bringing a claim of discriminatory discharge under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, in federal court. The Court explained that "[t]he distinctly separate nature of these contractual and statutory rights is not vitiated merely because both were violated as a result of the same factual occurrence. And certainly no inconsistency results from permitting both rights to be enforced in their respectively appropriate forums." 415 U.S. at 50, 94 S.Ct. at 1020.

Similarly, the Court in *McDonald v. City of West Branch*, 466 U.S. 284, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984), held that a civil rights action brought under 42 U.S.C. § 1983 was not precluded in federal court because of its prior submission to arbitration pursuant to a collective bargaining agreement. Following the reasoning in *Gardner–Denver*, the Court stated that "although arbitration is well suited to resolving contractual disputes, ... it cannot provide an adequate substitute for a judicial proceeding in protecting the federal statutory and constitutional rights that § 1983 is designed to safeguard." 466 U.S. at 290, 104 S.Ct. at 1803. Applying *Gardner–Denver* and *McDonald*, we hold that the arbitration procedures prescribed under the RLA are not appellants' sole forum for resolution of their Rehabilitation Act claims.

LIRR argues that the reasoning in *O'Brien v. Consolidated Rail Corp.*, 972 F.2d 1, 5 (1st Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 980, 122 L.Ed.2d 134 (1993),

should apply since handicap discrimination claims are different from other types of discrimination claims. In *O'Brien*, the First Circuit held that the RLA preempted a state law handicap discrimination claim. *O'Brien* is clearly distinguishable from the instant case, since it focused on avoiding state law interference with a federal statutory scheme. 972 F.2d at 4. In this case, we deal with two federal statutory schemes: one for encouraging voluntary arbitration of labor disputes and the other for eliminating discrimination in the workplace. These competing federal policies are not mutually exclusive; rather, they must be balanced.

In *Gardner–Denver*, the Court stated that arbitration was an inappropriate forum for the final resolution of civil rights claims for several reasons. First, arbitrators resolve disputes according to the terms of the collective bargaining agreement—not according to federal law. Their expertise is the "law of the shop, not the law of the land." 415 U.S. at 57, 94 S.Ct. at 1024. Second, the fact-finding process in arbitration generally is not equivalent to judicial fact-finding. Because arbitration is designed to resolve labor disputes inexpensively and efficiently, the parties to arbitration generally do not conduct extensive discovery and do not use the Federal Rules of Evidence. Absent the same rights and procedures provided in federal court, arbitration should not be the sole forum for final resolution of federal civil rights claims. 415 U.S. at 57–58, 94 S.Ct. at 1024. Thus, appellants' claims of discrimination under the Rehabilitation Act are not barred by their prior arbitration pursuant to the RLA.

Prima Facie Case of Discrimination

■ Having determined that the district court had jurisdiction to consider appellants' claims under the Rehabilitation Act, we now must determine whether the district court erred in holding that Bates, Butler, Salva, Abrams, and Horsey failed to establish a prima facie case of discrimination. In order to establish a prima facie case, appellants must show that at the time of their discharge (1) they were handicapped within the meaning of the Rehabilitation Act; (2) they were otherwise qualified to perform the essential

functions of their given positions; (3) they were discharged solely on the basis of their handicaps; and (4) LIRR receives federal financial assistance. *Doe v. New York Univ.*, 666 F.2d 761, 774–76 (2d Cir.1981).

It is undisputed that LIRR receives federal financial assistance and that appellants were handicapped within the meaning of the Rehabilitation Act. Further LIRR concedes that it discharged Bates, Butler, Salva, and Abrams solely because of their handicaps. Thus, the only issues determined by the district court were whether appellants were otherwise qualified to perform the essential functions of their given positions and whether appellant Horsey was discharged solely on the basis of her handicap.

a. Bates, Butler, Salva, and Abrams

In *Gilbert v. Frank*, 949 F.2d 637, 642 (2d Cir.1991), this court held that the plaintiff has the initial burden of showing that "she or he can perform the essential functions of the job in spite of the handicap either (a) with no need for accommodation, or (b) with a reasonable accommodation." To show this, appellants must present evidence regarding their individual physical capabilities and suggest "some reasonable assistance or job modification by the employer." *Id.* Plaintiffs argue that LIRR failed to reasonably accommodate them by refusing to allow them to bid for less strenuous positions within their crafts, as provided for in their respective collective bargaining agreements.

■ The district court found that LIRR was required to reasonably accommodate plaintiffs only with respect to the specific positions they previously held. While reasonable accommodation generally does not require an employer to reassign a disabled employee to a different position, an employer may not deny an employee his or her contractual right to bid for reassignment by reason of a disability. As the Supreme Court noted in *School Board v. Arline*, 480 U.S. 273, 289 n. 19, 107 S.Ct. 1123, 1131 n. 19, 94 L.Ed.2d 307 (1987),

Employers have an affirmative obligation to make a reasonable accommodation for a handicapped employee. Although they are not required to find anoth-

er job for an employee who is not qualified for the job he or she was doing, they cannot deny an employee alternative employment opportunities reasonably available under the employer's existing policies. *See also Lyles v. Department of the Army,* 864 F.2d 1581, 1583 (Fed.Cir.1989) (employee who does not meet requirements of position may be dismissed "unless additional rights are available from some other source"); *Shea v. Tisch,* 870 F.2d 786, 790 (1st Cir.1989) ("an employer is not required to find alternative employment unless he normally does so under his existing policies").

The relevant collective bargaining agreements in this case provide that when new positions are created or vacancies occur, employees eligible for the positions may bid for them. Generally, LIRR awards the position to the most senior qualified employee who bid. However, the collective bargaining agreements also contain faithful service provisions which provide that

> Employees who have given long and faithful service in the employ of [LIRR] and who have become unable to handle heavy work to advantage, will be given preference of such light work, if available, in their line, as they are able to handle satisfactorily, and will be paid the rate of position to which assigned.

JA 655, Rule 42; JA 575, Rule 22. While the bidding and faithful service provisions do not guarantee that a particular employee's bid will be accepted or, once accepted, eliminate the possibility of being bumped by a more senior employee in the future, these uncertainties are not relevant to the determination of whether an employee was denied a contractual right by reason of a disability.

■ Issues remain as to whether LIRR refused to allow plaintiffs Bates, Butler, and Salva to bid for positions as provided for in their respective collective bargaining agreements. These issues must be determined by the district court on remand, though it may be that as to one or more employees, the issue might be resolved by summary judgment.

■ The district court, however, properly granted summary judgment with respect to plaintiff Abrams. Because Abrams was reinstated to a less strenuous position than he previously held, with full seniority and back pay, there is no genuine issue of fact as to whether LIRR reasonably accommodated him.

#### b. Horsey

■ Horsey contends that she was terminated solely because of her disability in that her disability prevented her from attending required medical exams and disciplinary hearings. However, she offers no explanation as to why she was unable to contact LIRR by phone or in writing to request a postponement of the appointments or hearings or to explain why she was unable to appear. This court in *Teahan v. Metro–North Commuter R.R.,* 951 F.2d 511, 514 (2d Cir.1991), *cert. denied,* —— U.S. ——, 113 S.Ct. 54, 121 L.Ed.2d 24 (1992), held that an employer may not discharge an employee solely because of his or her handicap. In that case, we concluded that an issue of material fact was presented whether the absenteeism for which Teahan was dismissed resulted solely from his handicap of alcoholism. The facts in this case are clearly distinguishable from *Teahan,* since Horsey was not discharged solely because of her disability. Rather, she was discharged solely for her insubordination. Thus, the district court properly dismissed Horsey's claim.

### Statute of Limitations Issues with respect to Claims of Robinson, Gonzalez, and Wayne

The next issue on appeal is whether the district court properly held that the claims of Robinson, Gonzalez, and Wayne were barred by a three-year statute of limitations. Robinson's, Gonzalez's, and Wayne's claims were brought under Section 504 of the Rehabilitation Act. 29 U.S.C. § 794(a). Section 504 provides:

> [n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

The statute does not specify a time limitation for actions brought under this section. When a federal statute fails to specify a limitation period, the court applies the "most appropriate or analogous state statute of limitations." *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 660, 107 S.Ct. 2617, 2620, 96 L.Ed.2d 572 (1987); *Morse v. University of Vermont*, 973 F.2d 122, 125 (2d Cir.1992).

In *Morse*, this court held that the state statute of limitations that applies to personal injury actions applies to discrimination claims brought under Section 504 of the Rehabilitation Act. 973 F.2d at 127. Thus, though the district court applied New York's three-year statute of limitations applicable to statutory actions, N.Y. CPLR § 214(2), we uphold its ruling on the ground that the claims were barred by New York's three-year statute of limitations for personal injury actions, N.Y. CPLR § 215(5). Gonzalez's and Wayne's argument that the six-year statute of limitations for state contract actions should apply ignores the *Morse* decision. Thus, the district court properly dismissed their claims as untimely.

Robinson concedes that his claim is governed by a three year statute of limitations but argues that his claim was timely filed because he wasn't officially terminated until 1985 and, in any case, his grievance proceeding tolled the limitations period.

■ Under federal law, a claim accrues when the plaintiff knows or has reason to know of the injury that is the basis of the action. *Keating v. Carey*, 706 F.2d 377, 382 (2d Cir.1983). Thus, "the timeliness of a discrimination claim is measured from the date the claimant receives notice of the allegedly discriminatory decision." *O'Malley v. GTE Serv. Corp.*, 758 F.2d 818, 820 (2d Cir. 1985). The record on appeal shows that Robinson was terminated in 1980, when his FELA action was concluded and LIRR refused to return him to duty. Indeed, at that time Robinson wrote to LIRR's President complaining of his termination and asking for a new job and later accepted employment with several different employers. Thus, the district court properly concluded that there was no genuine issue of fact as to the date of Robinson's discharge.

■ The district court also was correct in holding that Robinson's grievance proceeding did not toll the limitations period. The record shows that the alleged discriminatory discharge took place in 1980 and that Robinson was aware of the discharge at that time.[1] The fact that Robinson grieved his termination does not affect the accrual date of his discrimination claim and does not toll the applicable statute of limitations. *Morse*, 973 F.2d at 125. Thus, the district court properly dismissed Robinson's claim as untimely.

### Application of Judicial Estoppel to Lyons' Claim of Discrimination

■ The last issue on appeal is whether the district court properly dismissed appellant Lyons' claim under the doctrine of judicial estoppel. The doctrine of judicial estoppel prevents a party from asserting a factual position in a legal proceeding that is contrary to a position previously taken by him in a prior legal proceeding. The doctrine has not been uniformly adopted by federal courts and its elements have never been clearly defined in this Circuit.[2]

■ Unlike equitable estoppel, which is designed "to ensure fairness in the relationship between parties," *Konstantinidis v. Chen*, 626 F.2d 933, 937 (D.C.Cir.1980), judicial estoppel protects the sanctity of the oath and the integrity of the judicial process.

---

1. While there is a notation in Robinson's service record indicating that he was dismissed in October 1985, the balance of the record supports the district court's ruling that Robinson was terminated in 1980.

2. Although several district courts have addressed the doctrine, only three Second Circuit opinions have discussed it in detail. *Merrill Lynch, Pierce,* *Fenner & Smith, Inc. v. Georgiadis*, 903 F.2d 109, 114 (2d Cir.1990); *Young v. U.S. Dep't of Justice*, 882 F.2d 633, 639–40 (2d Cir.1989), *cert. denied*, 493 U.S. 1072, 110 S.Ct. 1116, 107 L.Ed.2d 1023 (1990); *Sperling v. United States*, 692 F.2d 223, 227–29 (2d Cir.1982), *cert. denied*, 462 U.S. 1131, 103 S.Ct. 3111, 77 L.Ed.2d 1366 (1983).

Thus, there are two distinct objectives behind judicial estoppel, both of which seek to protect the judicial system. First, the doctrine seeks to preserve the sanctity of the oath by demanding absolute truth and consistency in all sworn positions.[3] Preserving the sanctity of the oath prevents the perpetuation of untruths which damage public confidence in the integrity of the judicial system. Second, the doctrine seeks to protect judicial integrity by avoiding the risk of inconsistent results in two proceedings. *See* Rand B. Boyers, Comment, *Precluding Inconsistent Statements: The Doctrine of Judicial Estoppel*, 80 Nw.U.L.Rev. 1244, 1250–58 (Spring 1986) (discussing various rationales behind doctrine).

 By focusing on the rationales behind judicial estoppel, the elements of the doctrine become clear. First, the party against whom the estoppel is asserted must have argued an inconsistent position in a prior proceeding; and second, the prior inconsistent position must have been adopted by the court in some manner.[4] The first element of the doctrine is applied easily to this case. Lyons argued that he was permanently disabled from physical labor in his previous FELA action, yet now argues that he is not permanently disabled and should be reinstated.

The second element, on the other hand, is not satisfied by the facts of this case. Lyons' FELA action settled before the jury rendered a verdict on damages. A " 'settlement neither requires nor implies any judicial endorsement of either party's claims or theo-

ries, and thus a settlement does not provide the prior success necessary for judicial estoppel.' " *Universal City Studios v. Nintendo Co.*, 578 F.Supp. 911, 921 (S.D.N.Y.1983) (quoting *Konstantinidis*, 626 F.2d at 939); *See also Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 599 (6th Cir.1982) ("if the initial proceeding results in settlement, the position cannot be viewed as having been successfully asserted"). Since there was no judicial acceptance of Lyons' claim of permanent disability, there was no basis for the district court to apply judicial estoppel to Lyons' Rehabilitation Act claim. Accordingly, the decision of the district court must be reversed on this issue.

## CONCLUSION

For the reasons set forth above, the decision of the district court is AFFIRMED as to plaintiffs Abrams, Horsey, Robinson, Gonzalez, and Wayne; and REVERSED and REMANDED as to plaintiffs Bates, Butler, Salva, and Lyons.

---

**3.** This goal is somewhat inconsistent with the spirit of Fed.R.Civ.P. 8(e)(2), which permits alternative and inconsistent pleading. For this reason, the Tenth Circuit has rejected the doctrine of judicial estoppel. *See Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1520 n. 10 (10th Cir.1991); *Parkinson v. California Co.*, 233 F.2d 432, 438 (10th Cir.1956); *see also* Douglas W. Henkin, Comment, *Judicial Estoppel—Beating Shields into Swords and Back Again*, 139 U.Pa.L.Rev. 1711 (June 1991) (arguing that doctrine should be abandoned because it conflicts with goals behind systems that permit or encourage inconsistent and alternate pleading and because Fed.R.Civ.P. 11 is adequate to sanction attorneys who have abused the oath).

**4.** The Second Circuit follows the majority view with respect to the second element of judicial estoppel. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Georgiadis*, 903 F.2d 109, 114 (2d Cir.1990).

"Under the minority view, judicial estoppel has been applied notwithstanding that a party was not successful in asserting its position in the prior judicial proceeding, if the court determines that the alleged offending party engaged in 'fast and loose' behavior which undermined the integrity of the court." *See Stevens Technical Services, Inc. v. SS Brooklyn*, 885 F.2d 584, 589 (9th Cir.1989).