Walter HIJECK

v.

UNITED TECHNOLOGIES CORP.

Helen TINO

v.

UNITED TECHNOLOGIES CORP.

Gordon B. TIZIANI

v.

UNITED TECHNOLOGIES CORP.

John K. ALDRICH

v.

UNITED TECHNOLOGIES CORP.

Frank W. GRACEWSKI

v.

UNITED TECHNOLOGIES CORP.

John J. McMANUS

v.

UNITED TECHNOLOGIES CORP.

Nos. 396CV1171(JBA),  396CV1605(JBA),
396CV1928(JBA),  396CV2116(JBA),
396CV2117(JBA) and 396CV2118(JBA).

United States District Court,
D. Connecticut.

Aug. 25, 1998.

**244**

Thomas G. Moukawsher, Moukawsher & Walsh, Groton, Michael Joseph Walsh, Moukawsher & Walsh, Hartford, CT, for plaintiffs.

Albert Zakarian, Esther R. Aronson, Glenn William Dowd, Sarah C. Baskin, Peter J. Duffy, Day, Berry & Howard, Hartford, CT, for defendant.

## RULING ON DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT

ARTERTON, District Judge.

### I. INTRODUCTION

Plaintiffs, Walter Hijeck, Helen Tino, Gordon B. Tiziani, John K. Aldrich, Frank W. Gracewski, and John J. McManus are em-

ployees who retired from United Technologies Corporation's ("UTC") Hamilton Standard and Pratt & Whitney divisions between 1990 and 1991. In their complaints, which allege identical causes of action based on slightly different facts, plaintiffs allege that they chose to retire in reliance on misrepresentations by defendant that no enhancement of employee benefits would be offered to employees, or was being seriously considered by the defendant.

Plaintiffs allege defendant failed to give complete and truthful responses to plaintiffs' inquiries regarding potential employee benefits, and failed to correct prior representations made by the defendant that caused plaintiffs to believe that no enhancement of employee benefits would be offered to employees, or was being seriously considered by the defendant when, as of the effective date of plaintiffs' retirements, UTC had decided to offer enhanced benefits in the form of a severance package, or was seriously considering such an offer. Plaintiffs allege that after their retirements, voluntary severance programs were offered, and that defendant's claimed misrepresentations breached a fiduciary duty toward plaintiffs because these offers constituted employee welfare benefit plans as defined in 29 U.S.C. 1002(1), and thus are governed by the Employee Income Security Act, 29 U.S.C. 1001, et seq. ("ERISA") and its fiduciary duty provisions. *See* 29 U.S.C. 1102.

Two severance package offers are at issue in these six cases. The package claimed to be under serious consideration by plaintiffs Hijeck, Tino and Tiziani concerns a voluntary reduction in force, involving "pay-in-lieu of notification" measured by employees' years of service at their current base rate; the package claimed to be under serious consideration by plaintiffs Gracewski, McManus and Aldrich concerns a voluntary severance package termed a "toolkit."

Defendant moves for summary judgment as to each plaintiff, claiming: (1) that there is no genuine issue of material fact that the packages to which plaintiffs claim they are entitled are not employee benefit plans governed by ERISA, and thus the Court lacks subject matter jurisdiction, and, alternatively, (2) that plaintiffs failed to bring their actions within the three year statute of limitations provided by ERISA.

## II. FACTUAL BACKGROUND [1]

### *Pratt & Whitney*

In early 1991, a voluntary separation package known as a "toolkit" was offered in the Operations Department at Pratt & Whitney to reduce its workforce. (Defendant's Rule 9(c) Statement as to Aldrich, Gracewski and McManus ¶ 4) ("Def.'s Stmt."). On March 12, 1991, a toolkit was offered in Pratt & Whitney's Commercial Engine Business and Engineering Departments. (Def.'s Stmt. ¶ 4). The purpose of the toolkits was to provide individual managers a way to adjust employment levels within their departments by obtaining the voluntary separation of employees if they determined they had a surplus at a particular time. (Def.'s Stmt. ¶ 5). The "Separation Agreement Voluntary" offered in March, 1991 provided to eligible employees that signed the separation agreement: (1) one week of pay for each full year of continuous service, as of the termination date, with a two week minimum, no maximum, and (2) a lump-sum payment of $9,000 less income tax withholding and applicable social security taxes, as well as a lump-sum payment of all earned but unused vacation pay, and a 30–day continuation of health, dental and life insurance with the option to purchase further insurance. (Plaintiffs' Opposition Memoranda, Exs. C–D).

In addition, the voluntary separation agreement provides that, in consideration for

---

**1.** Pursuant to Local Rule 9(c), all material facts set forth in the movant's statement will be deemed admitted unless controverted by the statement required to be served by the opposing party in accordance with Rule 9(c)(2). Each plaintiff's Rule 9(c) statement represents that *only* one material fact is genuinely in dispute, namely, whether the severance benefits referred to in each of the plaintiffs' complaints, and in the parties' briefs, are ERISA plans offered on multiple occasions, requiring an administrative scheme to implement them. (Plaintiffs' Rule 9(c) Statements, ¶ 1). Thus, the Court deems the factual assertions contained in defendant's Rule 9(c) statements to be admitted.

the severance payment, the employee releases and discharges Pratt & Whitney, UTC and its divisions, subsidiaries, successors, officers, directors, employees and agents from all claims arising from the separation from employment, in particular any claims arising under federal, state or local law regarding employment discrimination on the basis of race, color, religion, sex, national origin, disability, veteran status or the Age Discrimination in Employment Act, and claims arising from any written or oral contractual employment agreements. The voluntary separation agreement also provides that the employee will fully discharge and resolve any claims against the company by a date certain, so that the company and the employee "may end the employment relationship with all matters settled between us." (Opposition Memoranda of plaintiffs Aldrich, McManus and Gracewski, Exs. D). The voluntary severance agreement does not place on severing employees any continuing obligations, such as maintaining certain standards of conduct or obtaining comparable employment. Further, the agreement has no criteria for employee eligibility for receipt of severance package benefits, such as being in good standing or not terminated for cause. (*Id.*).

In support of its motions for summary judgment as to Aldrich and McManus, defendant submits the affidavit of Curt J. Michael, Manager of Human Resources of UTC's Pratt & Whitney division in March, 1991 at the time the severance benefit was offered. In support of its motion as to Gracewski, defendant submits the affidavit of Stephen J. Paluba, Senior Human Resources Representative at Pratt & Whitney. Mr. Michael and Mr. Paluba state, and plaintiffs do not dispute, that the purpose of a toolkit was to allow individual department managers to utilize voluntary separation of employees in order to adjust surplus employment levels in an effort to avoid involuntary layoffs within a department. These affiants also aver that once a department head decided to offer a toolkit, she or he had no discretion in determining the level of the benefits to be provided, which is also undisputed on this record. (Defendant's Memoranda as to Aldrich, McManus and Gracewski Exs. 1).

### Hamilton Standard

A reduction-in-force, of which voluntary separation was a part, was announced by the Hamilton Standard division of UTC on February 4, 1991. (Defendant's Statement as to Hijeck, Tino and Tiziani ¶ 4) ("Def.'s Stmt."). Under a voluntary separation package offered in connection with the reduction-in-force, any full-time salaried employee actively at work could seek to voluntarily resign by March 15, 1991. (Def.'s Stmt. ¶ 5) All employees who voluntarily resigned from Hamilton Standard received "pay-in-lieu of-notification" based on their years of service at their current base rate. (Defendant's Memoranda Exs. 1A). The "Separation Agreement" offered in connection with the reduction-in-force provided that separating individuals would be paid in semi-monthly increments, thus remaining on the payroll with medical, dental, and life insurance benefits until their severance period expired. (Def.'s Stmt. ¶ 7). If severing employees agreed to sign a release and waiver at the time of voluntary resignation, they would receive: (1) a lump-sum payment ranging between 1 and 26 weeks of pay (less applicable payroll taxes) in accordance with the enhanced separation package schedule based on years of service (Defendant's Memoranda Exs. 1A); (2) an additional lump-sum payment ranging between $1,000 and $9,000 in accordance with the enhanced separation package schedule (also based on years of service); and (3) COBRA benefits. (Opposition Memoranda of plaintiffs Hijeck, Tino and Tiziani Exs. B; Defendant's Memoranda Ex. 1A).

In further similarity to the toolkit offers, the pay-in-lieu-of-notification offers place no continuing obligations on severing employees, nor do the agreements place any eligibility requirements on the participating employee. (*Id.*).

In support of its motions for summary judgement as to Hijeck, Tiziani and Tino, defendant submits the affidavit of Scott D. Esposito, the Director of Human Resources at Hamilton Standard, and the Manager of Compensation and Benefits there between August, 1990 and January, 1995. Mr. Esposito avers that no employee who elected to

resign under the voluntary separation package was rejected. The record does not reveal any rebuttal by plaintiffs that defendant declined to permit any employee electing to resign in response to this offer to participate.

### III. SUMMARY JUDGMENT STANDARD

A party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142, (1970). When a court is confronted with facts that permit several different conclusions, all inferences from the underlying facts must be drawn in the nonmovant's favor. *Quaratino v. Tiffany & Co.*, 71 F.3d 58, 64 (2d Cir.1995). The trial court must bear in mind that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

If the movant demonstrates an absence of material issues of fact, a limited burden of production shifts to the non-movant, which must "demonstrate more than 'some metaphysical doubt as to the material facts, ... [and] must come forward with "specific facts showing that there is a genuine issue for trial." ' " *Aslanidis v. United States Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir.1993) (citations and emphasis omitted). Summary judgment, then is granted only when "there is an absence of evidence to support the nonmoving party's case," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), or, in other words, only if "no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight." *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir.1994).

### IV. DISCUSSION

#### *EXISTENCE OF AN ERISA PLAN*

▇▇ "ERISA was enacted because Congress found it desirable that 'disclosure be made and safeguards be provided with respect to the establishment, operation, and administration of [employee benefit] plans.' " *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 15, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987) (quoting 29 U.S.C. § 1001(a)). ERISA's legislative history demonstrates that ERISA is intended to protect employee benefits received pursuant to benefit plans:

Representative Dent, the House sponsor of the legislation, represented that ERISA's fiduciary standards "will prevent abuses of the special responsibilities borne by those dealing with plans." 120 Cong. Rec. 29197 (1974). Senator Williams, the Senate sponsor, stated that these standards would safeguard employees from "such abuses as self-dealing, imprudent investing, and misappropriation of plan funds." *Id.*, at 29932. The focus of the statute is thus on the administrative integrity of benefit plans—which presumes that some type of administrative activity is taking place. *See. e.g.*, H.R.Rep. No. 94–1785, p. 46 (1977) ("In electing deliberately to preclude state authority over these plans, Congress acted to insure uniformity of regulation with respect to their *activities* ") (emphasis added); 120 Cong. Rec. 29197 (1974) (remarks of Rep. Dent) (disclosure and reporting requirements "will enable both participants and the Federal Government to monitor the plans' *operations* ") (emphasis added); id., at 29935 (remarks of Sen. Javits) (disclosure meant to provide employees information "covering in detail *the fiscal operations* of their plan") (emphasis added).

*Id.* at 15–16, 107 S.Ct. 2211 (emphasis in original). In sum, the purpose of ERISA is to regulate employee welfare and benefit plans, and because only "plans" involve administrative activity potentially subject to employer abuse, the Supreme Court has held that the touchstone for application of ERISA is the existence of an undertaking or obligation by an employer requiring the creation of an ongoing administrative program. *Id.* at 12, 107 S.Ct. 2211.

▇▇ It is well established that a program to pay severance benefits may constitute an employee welfare plan warranting ERISA protection. *Tischmann v. ITT/Sher-*

*aton Corporation,* 145 F.3d 561, 565 (2d Cir. 1998) (citing *James v. Fleet/Norstar Financial Group, Inc.,* 992 F.2d 463 (2d Cir.1993)). Although " '[t]he term "employee welfare benefit plan" has been held to apply to most, but not all, employer undertakings or obligations to pay severance benefits,' " *Id.* (quoting *Schonholz v. Long Island Jewish Medical Center.,* 87 F.3d 72 (2d Cir.1996)), employer payment of severance benefits which have not been found to be ERISA protected plans are those which lack the hallmarks of managerial discretion and ongoing administration. *See e.g. James,* 992 F.2d 463. Accordingly, in determining whether the offers at issue constitute ERISA benefit plans, the Court must look to the circumstances surrounding the benefit offers, focussing on the presence or absence of factors which demonstrate the need for ERISA's protection of ongoing administrative activity from employer abuses. *Fort Halifax,* 482 U.S. at 16, 107 S.Ct. 2211. In *Fort Halifax,* the Supreme Court held that a Maine statute requiring employers to provide a one time severance payment to employees in the event of a plant closing was not a protected benefit plan under ERISA. 482 U.S. at 11–12, 107 S.Ct. 2211. Basing its conclusion on the fact that the one-time, lump-sum payment triggered by the plant closing required no administrative scheme to meet the employer's obligation, the Supreme Court concluded that where the employer assumed no responsibility under those circumstances to pay benefits on a regular basis, and thus faced no periodic demand on its assets that created a need for financial coordination and control, the Maine statute did not constitute an employee welfare benefit plan. *Id.*

The Second Circuit has held that courts should look to the following factors in determining which employer obligations and undertakings should be deemed to have created an ERISA plan: (1) "whether the employer's undertaking or obligation requires managerial discretion in its administration," (2) "whether a reasonable employee would perceive an ongoing commitment by the employer to provide benefits," and (3) "whether the employer was required to analyze the circumstances of each employee's termination separately in light of certain criteria."

*Tischmann,* 145 F.3d at 566; *Schonholz,* 87 F.3d at 76. No one factor is determinative in all cases, and other factors may be relevant in a different factual context. *Tischmann,* 145 F.3d at 566; *Schonholz,* 87 F.3d at 76.

In *Tischmann,* the Second Circuit quoted with approval *Simas v. Quaker Fabric Corp.,* 6 F.3d 849, 854 (1st Cir.1993) which held that "so long as Fort Halifax prescribes a definition based on the extent and complexity of administrative obligations, line drawing ... is necessary and close cases will approach the line from both sides." Cases found to have fallen on the non-ERISA side of the *Fort Halifax* line, including those decided in the Second Circuit, have concluded that certain forms of severance benefit offers do not enjoy ERISA protection because of the limited duration of the receipt of benefits, and the lack of managerial discretion or individual eligibility analysis required in administration of the benefits offered. Severance benefit offers found to not constitute ERISA plans were those which were short term and required only arithmetical calculations and clerical determinations in order to ascertain each employee's severance pay (i.e., individual calculation of payments based on a fixed schedule and deduction for taxes and health benefits), which did not require the ongoing, particularized, discretionary administration by an employer characteristic of an ERISA employee welfare benefit plan. *James,* 992 F.2d at 467 (simple arithmetical calculations and clerical determinations that Fleet was required to make to ascertain each employee's 60 days of severance pay was a "far cry" from the ongoing administrative scheme required of an employer to establish an ERISA plan). *See also Belanger v. Wyman–Gordon Company,* 71 F.3d 451 (1st Cir.1995) (four seriatim early retirement offers of lump-sum benefits did not constitute an ERISA plan because they lacked an ongoing administrative or financial obligation, but instead were the kind of severance payment excluded from ERISA protection in *Fort Halifax* ); *Fontenot v. NL Industries, Inc.,* 953 F.2d 960 (5th Cir.1992) (offer to severing executives of a lump-sum cash payment and continuation of certain benefits was not an ERISA plan because it provided only a one time lump-sum

payment, required no administrative scheme, required no payment of benefits on a regular basis, or individual analysis of the circumstances of each employee's termination); *Angst v. Mack Trucks, Inc.*, 969 F.2d 1530 (3d Cir.1992) (voluntary severance agreement which provided a lump-sum payment of $75,-000 and one year of continued benefits was not an ERISA plan because the "simple disbursement" of $75,000 required no ongoing administrative scheme, and one year of continued benefits did not require the creation of a new administrative scheme, or materially alter an existing one); *McLemore v. U.S. Fidelity & Guaranty Co.*, 829 F.Supp. 192 (S.D.Miss.1993) (severance plan providing for lump-sum payment based in part on years of service and providing for temporary continuation of existing health benefits was not an ERISA plan where determining employees' eligibility involved only mathematical calculations, and the plan's provision of continued benefits added nothing more than a time limitation for the cessation of those benefits after termination, citing *Angst* ); *Wells v. General Motors Corporation*, 881 F.2d 166 (5th Cir.1989) (offer of severance pay either in lump-sum or two-year installment payments to employees agreeing to separate voluntarily was not ERISA benefit plan because lump-sum benefit did not require continuing administration of a payment program).

Conversely, cases falling on the ERISA protected side of the *Fort Halifax* line have focused on the lengthy period of time the benefits would be paid, the managerial discretion necessary to the employer's administration of the severance benefits offered, and individual eligibility determinations to be made in reference to certain criteria. In *Tischmann*, the severance benefits offered were found to constitute an ERISA protected severance benefit plan because of (1) the protracted period of time over which the benefits were to be paid, (2) the requirement that in order to receive the severance benefits an employee must continue to be available to render the company reasonable assistance, (3) the employee's responsibility to meet continuing conduct-based obligations, such as complying with covenants not to compete or disclose confidential information, and (4) the eligibility requirement that the employee's termination must not have been for "cause." 145 F.3d at 566–67.

The Second Circuit concluded that the severance benefit offer in *Schonholz* was an ERISA protected plan because it required both managerial discretion in administration, as well as an individualized analysis of each employee's eligibility, namely, the cause of his or her involuntary termination, as well as whether the employee was making a good faith effort to obtain suitable employment which was commensurate with the employee's former level of responsibility. *Id.* at 76–77. The benefit offer also had an unlimited effective period and thus would reasonably have been understood by an employee as an ongoing commitment to provide benefits. *Id.* See also *Bogue v. Ampex Corporation*, 976 F.2d 1319 (9th Cir.1992) (severance payments were found to constitute an ERISA plan because the severance program's administrator was obligated to engage in an ongoing, particularized, administrative, discretionary analysis deciding whether an executive seeking participation in the program had been offered a job "substantially equivalent" to his or her former job). See also *Pane v. RCA Corporation*, 868 F.2d 631, 635 (3d Cir. 1989).

In making a determination whether the severance benefit offers at issue are ERISA protected benefit plans, the Court is given for consideration a "General Notice" issued by defendant's Hamilton Standard division on February 4, 1991, which announced that the company planned a 550 employee reduction-in-force to be accomplished by layoff, voluntary resignations and retirements. The notice further provided that layoff notification would begin on February 4, 1991 and be effective by mid-February 1991, with the portion accomplished through voluntary resignations and retirements to be completed by the end of March 1991. (Tino, Hijeck and Tiziani Opposition Memoranda, Exs. B; Aldrich, Gracewski, and McManus Opposition Memoranda, Exs. C). Plaintiffs also submit the "Separation Agreement," described in detail *supra*, which was offered in connection with the Hamilton Standard reduction-in-force. (*Id.*) In addition, plaintiffs submit the "Separation Agreement Voluntary" offered in con-

nection with the reduction-in-force at Pratt & Whitney in March, 1991, also described in detail *supra.* (Tino, Hijeck and Tiziani Opposition Memoranda, Exs. C; Aldrich, Gracewski, and McManus Opposition Memoranda, Exs. D). No other documentary evidence has been submitted regarding the severance benefit offers at issue.

Plaintiffs maintain that both the Pratt & Whitney severance benefit offer in March, 1991 and Hamilton Standard's severance benefit offer in February, 1991 are ERISA protected benefit plans because both offers require "at least 'minimal' administration," namely "complicated individual calculations had to be made and the benefits varied based upon such factors as years of service as well as rates of pay." (Opposition Memoranda of all plaintiffs at 5). Plaintiffs' argument that the offers require an ongoing administrative scheme is based *solely* on these calculations, required under the agreements. Plaintiffs distinguish *James* on the ground that "no significant individualized calculations" were found to be required by the Fleet plan, unlike those claimed necessary here. However, the calculations required here consist of multiplying salary by the weeks of severance pay/ years of service formulation and deducting applicable payroll taxes, which actually mirrors those "simple arithmetic calculations" found inadequate by the Second Circuit in *James* to constitute an ongoing administrative scheme under ERISA. 992 F.2d at 467. Moreover, plaintiffs have made no showing on this record that the offers at issue called for any analysis of the circumstances of each employee's termination as in *Tischmann* (plan required examination of the circumstances of each covered employee's termination to determine whether it was for cause), *Schonholz* (plan required determination as to whether termination was for either illegal conduct or "substantially deficient performance"); *Bogue* (plan required determination of whether executive had been offered a "substantially equivalent" job with company's buyer). In short, an employer's obligations are ministerial, and not subject to abuse of discretion when its function vis-a-vis a severance benefit is merely to multiply an employee's service time by an amount of severance pay and deduct payroll taxes.

Plaintiffs also contend that because the individual department managers were entitled to assess their departmental situation and make individual judgment calls as to whether and when to offer severance packages, this demonstrates managerial discretion in connection with the severance offers. Discretion of department managers to offer a severance benefit package, however, differs from the discretion necessary to *administer* that severance package, e.g., making "context-sensitive judgments requiring managerial discretion on a continuing, individualized basis." *Tischmann,* 145 F.3d at 567. Rather, plaintiffs' argument suggests that the mere offer of a severance benefit package to employees renders the package an ERISA plan, contrary to the holding of *Schonholz,* recognizing that not all employer undertakings or obligations to pay severance benefits are ERISA plans. 87 F.3d at 75. Plaintiffs also submit that the multiple use of the severance benefit offer, as well as the use of both the Pratt & Whitney and Hamilton Standard offers around the same time period, demonstrate that an ongoing administrative scheme would have been necessary in order to carry them out. This aggregation, however, does not alone create an ERISA plan since the aggregation similarly lacks factors supporting the conclusion that an ERISA plan has been created, as did the component severance benefit offers. *See Belanger,* 71 F.3d at 455 (holding that four severance offers in combination did not constitute an ERISA plan where no showing was made why "the sheer number" of ERISA-exempt early retirement offers, without more, served to alter the *Fort Halifax* analysis).

Further, plaintiffs make no showing on this record that an employee would perceive an ongoing commitment by the employer to provide benefits. For example, ERISA severance benefits plans have been found where a plan was designed to pay benefits when various covered executives left a company, which departures could be expected to occur over a protracted period of time, *Tischmann,* 145 F.3d at 566, and where an employer's obligation was not limited to a single payment, or a short time span, but had an

unlimited effective period. *Schonholz,* 87 F.3d at 77–76. Conversely, the severance agreements offered in connection with the divisions' reductions-in-force, and the unrebutted affidavit submissions by defendant, show that the severance payments were intended to be paid out once in a lump-sum, or in the case of the Hamilton Standard offer, in semi-monthly increments for a fixed period based on years of service, (Opposition Memoranda of all plaintiffs, Exs. C), which time restrictions are similar to the non-ERISA severance benefits found in *James, Belanger, Fontenot,* and *Wells.*

■ Additionally, there is no factual showing on this record that the severance agreements placed any requirements on the severing employees implicating an ongoing compliance monitoring function in order to continue to receive benefits, such as maintaining certain standards of conduct, or attempting to obtain alternate, comparable employment. *See Tischmann,* 145 F.3d at 567; *Schonholz,* 87 F.3d at 76. Although the separation agreements require a severing employee to release any potential legal claims he or she may have regarding the termination, this requirement is not analogous to a continuing duty not to disclose trade secrets, work for a competitor, or engage in any activity which is "inimical to the best interests" of the company, which the Second Circuit has found to be indicative of an ongoing commitment to provide benefits, i.e., so long as the severing employee's conduct is acceptable. *Tischmann,* 145 F.3d at 567. The severance agreements do not provide for discontinuation or return of benefits in relation to the employee's forbearance of suit, but simply provide the defendant with a defense to any such suit brought thereafter.

■ Plaintiffs also argue that the severance benefit offers call for continuation of other unquestionably ERISA covered benefits such as medical, dental and life insurance, all of which necessitate the existence of ongoing administrative schemes. The thrust of plaintiffs' argument appears to be that these ongoing administrative schemes should carry-over to the severance benefit offers

themselves, making them ERISA protected plans. This precise argument, however, was rejected in *Angst,* in which the Third Circuit reasoned that although a severance package provided for continuation of certain benefits for one year, it did not require the creation of a new administrative scheme. Rather, the departing employees had already been entitled to such benefits under an existing, undisputedly ERISA protected plan. *Angst* concluded that the continuation of the benefits simply required the continuation of an existing administrative procedure, and that the continued benefits *themselves* would merely remain governed by ERISA-the continuation of the benefits did not transform the severance package into an ERISA plan. 969 F.2d at 1540–41. *See also Alegi v. Blue Cross & Blue Shield of Connecticut,* 3:97cv787(PCD) (D.Conn. August 25, 1997) (Dorsey, J.), slip op. at 5–6 (concluding that a severance package was not an ERISA plan even where package provided for continuation of medical and dental benefits because those benefits were already provided to the employees under separate ERISA plans, and did not create a new administrative scheme or materially alter the existing scheme).[2] The Court concludes that the reasoning of *Angst* and *Alegi* is persuasive, and that those cases counsel the same result here, namely, that the severance benefit offers are not ERISA governed plans simply because they provide for continued benefits under an already existing ERISA plan.

■ Finally, plaintiffs maintain that the Court is not without guidance about the Hamilton Standard severance offer because it was the subject of litigation in *Hall v. United Technologies Corporation,* 872 F.Supp. 1094 (D.Conn.1995) (Nevas, J.), where defendant did not challenge the complaint on the ground that the plan was not governed by ERISA, but instead moved to dismiss for failure to state a claim under ERISA. Plaintiffs appear to argue that defendants are thus judicially estopped from claiming that the Hamilton Standard offer does not constitute an ERISA plan. A showing of judicial estoppel requires (1) that the party against whom the estoppel is asserted

---

2. Plaintiffs do not contend that the severance    benefit offers amended any existing ERISA plan.

must have argued an inconsistent position in a prior proceeding, and (2) the prior inconsistent position must have been adopted by the court in some manner. *Bates v. Long Island Railroad,* 997 F.2d 1028, 1038 (2d Cir.1993). In *Hall,* however, Judge Nevas ruled on defendant's motion to dismiss, explicitly stating that, for the purposes of ruling on the motion to dismiss, the court accepted as true that the Hamilton Standard voluntary separation agreements either were employee benefit plans subject to ERISA, or amended an existing employee benefit plan. 872 F.Supp. at 1096–97. Defendant, accepting the allegations of plaintiff's complaint as true for its motion to dismiss, took no position on this issue, nor did Judge Nevas adopt any position by defendant on this issue given the procedural posture of the case. Thus, it cannot be said that the requirements of judicial estoppel have been demonstrated by plaintiffs such that this Court should hold that defendant is estopped from denying that the Hamilton Standard severance offer is an ERISA plan on the basis of *Hall.*

In view of plaintiffs' failure to demonstrate on this record any genuine dispute of fact that either the Hamilton Standard or Pratt & Whitney severance benefit offer: (1) required managerial discretion in its administration, (2) allowed a reasonable employee to perceive an ongoing commitment by defendant to provide benefits under these offer, and/or (3) required defendant to analyze the circumstances of each employee's termination separately in light of certain criteria, the Court concludes that plaintiffs have not demonstrated the existence of a factual issue as to whether an ongoing administrative scheme exists requiring ERISA protection in connection with the severance benefit offers. Accordingly, plaintiffs have failed to show a jurisdictional basis for their suits, and therefore defendant's motions for summary judgment are granted as to each plaintiff.

Because the Court lacks subject matter jurisdiction, it does not reach defendant's statute of limitations arguments.

## V. CONCLUSION

Defendant's Motions for Summary Judgment are granted in:

*Hijeck v. United Technologies Corp.* (3:96cv1171(JBA)) (doc. 39)

*Tino v. United Technologies Corp.* (3:96cv1605(JBA)) (doc. 19)

*Tiziani v. United Technologies Corp.* (3:96cv1928(JBA)) (doc. 27)

*Aldrich v. United Technologies Corp.* (3:96cv2116(JBA)) (doc. 22)

*Gracewski v. United Technologies Corp.* (3:96cv2117(JBA)) (doc. 17)

*McManus v. United Technologies Corp.* (3:96cv2118(JBA)) (doc. 17)

IT IS SO ORDERED.