**Peter TISCHMANN, Plaintiff–Appellant/Cross–Appellee,**

v.

**ITT/SHERATON CORPORATION, Defendant–Appellee/Cross–Appellant.**

**Nos. 1179, 1069, Dockets 97–7624, 97–7712.**

United States Court of Appeals, Second Circuit.

Argued Feb. 13, 1998.

Decided June 10, 1998.

Steven G. Eckhaus, New York City (Jonathan C. Moore, Roger D. Olson and Marc A. Stadtmauer, Eckhaus & Olson, New York, NY, of Counsel), for Plaintiff–Appellant/Cross–Appellee.

Peter A. Cross, New York City (Catherine A. McCann, Jacob, Medinger & Finnegan, LLP, New York, NY, of Counsel), for Defendant–Appellee/CrossAppellant.

Before: JACOBS, LEVAL, and LAY *, Circuit Judges.

LEVAL, Circuit Judge:

Plaintiff Peter Tischmann appeals from a judgment of the United States District Court for the Southern District of New York (Michael H. Dolinger, *Magistrate Judge*) dismissing Tischmann's claims against his former employer, defendant ITT/Sheraton Corporation ("ITT/Sheraton" or "Sheraton"). The complaint alleged that the defendant wrongfully failed to pay severance benefits as promised under a severance plan. The court concluded that the severance plan was an employee welfare benefit plan within the meaning of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* and that, accordingly, Tischmann's state law claims were preempted and should be construed instead as a claim for benefits under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). Because the claim was founded on ERISA, the court determined that plaintiff had no entitlement to jury trial. The court assessed the evidence and found that Tischmann had failed to prove his claims. We affirm.

## BACKGROUND

Tischmann began working for defendant in 1972. In 1985, Sheraton named him general manager of the St. Regis Hotel in New York City. From December 1, 1986 through November 30, 1990, Tischmann had worked pursuant to a written employment contract. In 1989, the defendant decided to eliminate virtually all employment contracts with its executives. After his employment contract terminated in late 1990, Tischmann continued in his previous position without a written contract, as an "at will" employee. Following the elimination of employment contracts, ITT/Sheraton created plans to provide severance benefits for senior executives. Tischmann and approximately 20 other management employees were covered by one of these plans, the ITT Special Executive Severance Pay Plan ("the ITTSESPP" or "the plan").

The ITTSESPP provided, *inter alia,* that a covered executive would receive severance payments in an amount based on his previous salary if his employment was terminated involuntarily, unless the termination was "for cause." The payments would either be paid periodically in accordance with ITT/Sheraton's regular payroll schedule or, if ITT/Sheraton elected, in a lump sum. The plan provided that employees receiving severance benefits would be subject to certain continuing obligations.

In early 1992, several of Tischmann's subordinates in the Human Resources Department of the St. Regis complained that Tischmann had sexually harassed them. After investigation, Sheraton officials determined that Tischmann had violated the company's sexual harassment policies. In March 1992, Sheraton terminated his employment. Because his termination was deemed "for

---

* Honorable Donald P. Lay, United States Circuit Judge for the Eighth Circuit, sitting by designation.

cause," Sheraton declared Tischmann ineligible for benefits under the plan.

Tischmann brought this action in the United States District Court for the Southern District of New York, under diversity jurisdiction. Citing the law of New York as authority, the complaint sought reinstatement, compensatory and punitive damages, and attorneys' fees claiming (i) breach of an alleged contract of employment; (ii) breach of an implied covenant of good faith and fair dealing; (iii) intentional and negligent infliction of emotional distress; (iv) slander; (v) compelled self-publication defamation; (vi) entitlement to attorneys' fees and liquidated damages under New York Labor Law § 190 *et seq.*; and (vii) breach of the contractual promise to pay severance benefits. Tischmann claimed he had not sexually harassed his subordinates and was not fired "for cause," but was fired to save money, to deflect criticism from stockholders with respect to the amount of compensation paid by Sheraton, and because his management style, age, and national origin did not reflect an attractive image. Tischmann sought trial by jury on all claims.

In April 1994, ITT/Sheraton moved for summary judgment on all counts. In an opinion entered April 10, 1995, Judge Shirley Wohl Kram granted summary judgment in favor of ITT/Sheraton on all counts except the severance benefits claim and the New York Labor Law claim. *See Tischmann v. ITT/Sheraton Corp.*, 882 F.Supp. 1358, 1371 (S.D.N.Y.1995). With respect to the severance benefits claim, citing *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987) and *James v. Fleet/Norstar Fin. Group, Inc.*, 992 F.2d 463 (2d Cir.1993), Judge Kram concluded that the ITTSESPP was not a "plan" within the meaning of ERISA with the consequence that Tischmann's state law claim was not preempted. *See Tischmann*, 882 F.Supp. at 1368–69. Judge Kram also concluded that Tischmann had stated a viable claim under the New York Labor Law § 190. *See id.* at 1370.

The parties then consented to proceed to trial before a magistrate judge pursuant to 28 U.S.C. § 636(c), and the case was reassigned to Magistrate Judge Dolinger. Before trial, ITT/Sheraton asked the magistrate judge to reconsider Judge Kram's ruling that ERISA was inapplicable to the claim for severance benefits. The defendant argued that, whereas a state law claim could be tried to a jury, Tischmann would have no right to a jury trial on a claim for ERISA benefits under this court's decision in *Sullivan v. LTV Aerospace and Defense Co.*, 82 F.3d 1251, 1257–59 (2d Cir.1996). The magistrate judge decided to take the question under advisement, and proceed to trial before a jury on the state law theories, holding open the possibility of making his own findings if he should subsequently determine that the claim for severance benefits was governed by ERISA.

At the conclusion of the trial, the jury returned a special verdict in favor of Tischmann. The jury found that ITT/Sheraton's termination of Tischmann was arbitrary or in bad faith, thus entitling him, under New York law, to severance pay in the amount of $364,000 plus interest. On the other hand, the jury found that ITT/Sheraton had not acted "willfully" in refusing to pay Tischmann severance benefits, thereby precluding Tischmann from recovering an award of attorneys' fees under New York Labor Law § 190.

Following the verdict, ITT/Sheraton renewed its motion for reconsideration of Judge Kram's decision on the applicability of ERISA, and moved for judgment as a matter of law. Magistrate Judge Dolinger found that reconsideration of Judge Kram's ruling was appropriate, partly because of new testimony adduced at trial regarding the ITT-SESPP and partly because of this court's intervening decision in *Schonholz v. Long Island Jewish Medical Center*, 87 F.3d 72 (2d Cir.), *cert. denied*, —— U.S.——, 117 S.Ct. 511, 136 L.Ed.2d 401 (1996). On reconsideration, the magistrate judge determined that the severance plan was an ERISA "plan," that Tischmann's state law claim for severance benefits was accordingly preempted, and that that claim should "therefore be construed as a claim for benefits under ERISA, 29 U.S.C. § 1132(a)(1)(B)." Based on *Sullivan*, the magistrate judge concluded,

the merits of the ERISA claim should be decided by the court. Because the severance plan gave the plan administrator considerable discretion in determining benefits eligibility, the court found the decision that Tischmann was not entitled to benefits should be reviewed under an "arbitrary or capricious" standard. The court concluded that the denial of benefits was not arbitrary or capricious, and that Tischmann's claim under the New York Labor Law § 190 failed because of ERISA preemption or, alternatively, because the denial of benefits was justified.

Judgment dismissing Tischmann's complaint was entered, and this appeal followed. Tischmann's appeal focusses on two contentions, first that his state law claims were not preempted by ERISA, and second that, even under ERISA, he should have been accorded trial by jury.

## DISCUSSION

### I. *Applicability of ERISA*

■ Both sides agree that if the ITTSESPP is an "employee welfare benefit plan" within the meaning of ERISA, then Tischmann's state law claim for severance benefits is preempted by ERISA and should be construed as a claim for benefits under ERISA § 502(a)(1)(B). *See* 29 U.S.C. § 1144(a) (providing generally that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...."). [1] Tischmann, however, contends the magistrate judge erred in con-

cluding that the ITTSESPP is an ERISA-governed plan. [2]

■ First, Tischmann argues that the magistrate judge was bound, under the principle of "law of the case" to adhere to Judge Kram's prior determination that the ITTSESPP was an ERISA plan. Tischmann's argument fails for at least three reasons. First, "the [law of the case] doctrine 'is, at best, a discretionary doctrine, which does not constitute a limitation on the court's power'" but merely expresses a general reluctance, absent good cause, to reopen rulings that the parties have relied upon. *Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 131 (2d Cir.), *cert denied*, — U.S. —, 118 S.Ct. 365, 139 L.Ed.2d 284 (1997)(quoting *United States v. Martinez*, 987 F.2d 920, 923 (2d Cir.1993)). Second, reconsideration of Judge Kram's decision was justified by this court's intervening decision in *Schonholz*, which provided further guidance regarding ERISA's application to severance plans. *See Virgin Atlantic Airways, Ltd. v. National Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir.1992) (intervening change of controlling law justifies reconsideration of prior ruling). Third, it makes no difference on this appeal whether the magistrate judge acted in accord with the principle of law of the case. The issue on appeal is whether the ITTSESPP is an ERISA plan. We would need to pass on that question *de novo, see Schonholz*, 87 F.3d at 75, whether Magistrate Judge Dolinger had followed Judge Kram's ruling or made his own contrary determination. In either event, our job would be to determine, as a

---

1. Tischmann does argue that three recent Supreme Court decisions evince a more restrictive view of the scope of ERISA preemption. *See Boggs v. Boggs*, — U.S.—, 117 S.Ct. 1754, 138 L.Ed.2d 45 (1997); *De Buono v. NYSA–ILA Med. and Clinical Serv. Fund*, — U.S.—, 117 S.Ct. 1747, 138 L.Ed.2d 21 (1997); *California Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc.*, 519 U.S. 316 , 117 S.Ct. 832, 136 L.Ed.2d 791 (1997). However, these cases concerned the issue when state laws are properly deemed to "relate to" conceded ERISA "plans." Hence, none bears directly on the definition of ERISA plans. *Dillingham* held that California's prevailing wage law, including a provision allowing for payment of lower-than-prevailing wages to participants in state-approved apprenticeship programs, was not preempted by ERISA since the California law neither made "reference to" nor had a "connection with" ERISA. 519 U.S.

at —, 117 S.Ct. at 837–42. *Boggs* held that ERISA preempted operation of Louisiana's community property law insofar as it allowed a predeceasing spouse to transfer through her will an interest in her husband's ERISA-governed benefits. — U.S. at —, 117 S.Ct. at 1766–67. And *De Buono* held that ERISA did not preempt a New York state tax on gross receipts of healthcare facilities, even where such facilities were operated by ERISA-governed funds. — U.S. at —, 117 S.Ct. at 1752. We do not understand Tischmann to be arguing that these cases allow his claim for severance benefits to escape ERISA coverage even if it is an ERISA "plan."

2. Tischmann does not contend that he is entitled to relief under the New York Labor Law if the ITTSESPP is an ERISA-governed plan.

matter of law, whether the ITTSESPP is governed by ERISA.

■ With respect to this question, it is well established that "a program to pay severance benefits may constitute an 'employee welfare plan.'" *James,* 992 F.2d at 468. *See generally* 29 U.S.C. § 1002(1)(setting forth the definition of "employee welfare benefit plan"); *Fort Halifax,* 482 U.S. at 7 & n. 5, 107 S.Ct. at 2215 & n. 5 ("[S]everance benefits are included in ERISA")(citing 29 U.S.C. § 1002(1)(B)). Indeed, as we stated in *Schonholz,* "[t]he term 'employee welfare benefit plan' has been held to apply to most, but not all, employer undertakings or obligations to pay severance benefits." 87 F.3d at 75.

What is in dispute, as in *Fort Halifax, James,* and *Schonholz,* is whether the particular employer undertaking at issue—here, the ITTSESPP—is an ERISA "plan." "[T]he terms 'employee benefit plan' and 'plan' are defined only tautologically in the statute...." *Fort Halifax,* 482 U.S. at 8, 107 S.Ct. at 2216. However, "both the Supreme Court and this court have emphasized that ERISA applies only where such an undertaking or obligation requires the creation of an ongoing administrative program." *Schonholz,* 87 F.3d at 75. As explained in *Fort Halifax,* this principle flows from the policies underlying ERISA preemption: "Congress intended pre-emption to afford employers the advantages of a uniform set of administrative procedures governed by a single set of regulations." 482 U.S. at 11, 107 S.Ct. at 2217. For example, tasks such as "determining the eligibility of claimants, calculating benefit levels, making disbursements, monitoring the availability of funds for benefit payments, and keeping appropriate records in order to comply with applicable reporting requirements," would be difficult to perform if an employer were "subject to differing regulatory requirements in differing States." *Id.* at 9, 107 S.Ct. at 2216. But "[t]his concern only arises ... with respect to benefits whose provision by nature requires an ongoing administrative program to meet the employer's obligation. It is for this reason that Congress pre-empted state laws relating to *plans,* rather than simply to

*benefits.* Only a plan embodies a set of administrative practices vulnerable to the burden that would be imposed by a patchwork scheme of regulation." *Id.* at 11–12, 107 S.Ct. at 2217.

Thus, in *Fort Halifax,* the Supreme Court held that ERISA did not preempt a Maine statute that required employers who relocated or terminated operations of a plant to provide a one-time severance payment to employees who had worked at the plant for at least three years. 482 U.S. at 3–5 & n. 1, 107 S.Ct. at 2213–14 & n. 1. The Court reasoned that the statute's imposition of one-time, contingent obligations on employers did not require the creation of plans:

> The requirement of a one-time, lump-sum payment triggered by a single event requires no administrative scheme whatsoever to meet the employer's obligation. The employer assumes no responsibility to pay benefits on a regular basis, and thus faces no periodic demands on its assets that create a need for financial coordination and control.... To do little more than write a check hardly constitutes the operation of a benefit plan. Once this single event is over, the employer has no further responsibility. The theoretical possibility of a one-time obligation in the future simply creates no need for an ongoing administrative program for processing claims and paying benefits.

*Id.* at 12, 107 S.Ct. at 2218 (footnotes omitted).

Similarly, in *James,* this court held that an employer had not created an employee benefit plan by virtue of promising, in light of a planned consolidation and accompanying workforce reduction, to pay employees who agreed to work until the end of the consolidation an amount equal to 60 days additional pay. The money would be paid following each employee's last day of work, and could be taken, at the employee's election, in either a lump-sum or bi-weekly installments. 992 F.2d at 464. Among other factors, we emphasized that the severance payments would "occur over a short time." *Id.* at 466. In addition, within this short time frame, the "need to make ... simple arithmetical calculations"—such as determining the amount of

benefits payable to each employee and the appropriate deductions for social security taxes, health and medical benefits, and 401k plans—"did not require the 'establish[ment of] a uniform administrative scheme.'" *Id.* at 467 (quoting *Fort Halifax*, 482 U.S. at 9, 107 S.Ct. at 2216). Because the employer's undertaking did not "require an ongoing administrative employer program," it was not a plan, and the plaintiff's claim for benefits was not preempted. *See id.*

In contrast, in *Schonholz*, we determined that an employer had created an employee benefit plan by virtue of its promise to pay severance benefits to discharged senior employees in amounts based upon each employee's length of employment and prospects for reemployment. 87 F.3d at 74, 76–77. Under the arrangement, an otherwise eligible employee would not be entitled to benefits if he failed to make a reasonable and good faith effort to obtain a new job comparable to his prior position. *Id.* at 74. Nor would an employee be entitled to benefits if he was terminated for illegal conduct or substantially deficient performance. *See id.* The plan contained no provision for its termination or amendment. *See id.*

In analyzing whether this undertaking constituted a plan, the *Schonholz* opinion looked to: (1) "whether the employer's undertaking or obligation requires managerial discretion in its administration"; (2) "whether a reasonable employee would perceive an ongoing commitment by the employer to provide employee benefits"; and (3) "whether the employer was required to analyze the circumstances of each employee's termination separately in light of certain criteria." *Id.* at 76 (internal quotation marks and citations omitted). We did "not decide ... which one or more of these factors will be determinative in every case" because we concluded that all favored the conclusion that a plan had been created. *Id.* at 76. Nor did we preclude the possibility that other factors might be relevant in a different factual setting. *Cf. Simas v. Quaker Fabric Corp.*, 6 F.3d 849, 854 (1st Cir.1993)("[S]o long as *Fort Halifax* prescribes a definition based on the extent and complexity of administrative obligations, line drawing ... is necessary and close cases will approach the line from both sides.").

Although the ITTSESPP presents a somewhat closer issue than the arrangement in *Schonholz*, we conclude that it nonetheless is an ERISA-governed plan. It is true that, in contrast to the *Schonholz* plan, the ITTSESPP provides that it is subject to termination or amendment by ITT/Sheraton. This provision weighs against the conclusion, under the second *Schonholz* factor, that a reasonable employee would perceive the plan as an "ongoing commitment." However, the termination right is not absolute; the plan provides that termination (or any amendment) may not "reduce or adversely affect" the severance benefits of any eligible employee "whose employment terminates within two years of the effective date" of plan termination (or amendment).

Moreover, other factors weigh in favor of viewing the ITTSESPP as an "ongoing," though not necessarily limitless, commitment to pay benefits. Of particular significance, "[u]nlike the employer's obligation in *Fort Halifax* and the promise in *James*, the [ITTSESPP is] not limited either to a single payment or to a short span of time upon a plant or office closing." *Schonholz*, 87 F.3d at 76. Rather, the plan is designed to pay benefits when each covered executive leaves ITT/Sheraton; these departures might well be expected to occur over a protracted period of time. *Cf. Fort Halifax*, 482 U.S. at 18 n. 10, 107 S.Ct. at 2221 n. 10 (noting, in discussing this court's opinion in *Gilbert v. Burlington Indus., Inc.*, 765 F.2d 320 (2d Cir.1985), *aff'd mem.*, 477 U.S. 901, 106 S.Ct. 3267, 91 L.Ed.2d 558 (1986) that "a commitment to pay severance benefits to employees as each person left employment" created "the need for an administrative scheme to pay these benefits on an ongoing basis.").

Two other provisions further suggest that the ITTSESPP contemplates an ongoing relationship between ITT/Sheraton, as plan administrator, and covered employees. First, ¶ 5 of the plan states that "If an Executive is receiving [benefits], the Executive must continue to be available to render the Company reasonable assistance, consistent with the level of the Executive's prior position with

the Company, at times and locations that are mutually acceptable." Second, ¶ 9 of the plan provides that a recipient will lose entitlement to benefits for failure to comply with specified standards of conduct during the period of receipt of benefits.

In response, Tischmann points to the fact that ITT/Sheraton reserved the right to pay an employee all his remaining severance benefits "in the form of a discounted lump sum." This provision merely allows ITT/Sheraton, with respect to any given recipient, to transform its continuing obligation into a one-time payment. It does not mean that ITT/Sheraton has not made an "ongoing" commitment to pay benefits—whether in the form of periodic or lump-sum payments—to covered employees in the event their employment is terminated. We see no reason to conclude that the right to pay benefits in lump-sum form takes a severance plan outside of ERISA coverage. *Cf. Fort Halifax*, 482 U.S. at 14 n. 9, 107 S.Ct. at 2219 n. 9 (noting that "[w]hile death benefits may represent a one-time payment from the perspective of the beneficiaries, the employer clearly foresees the need to make regular payments to survivors on an ongoing basis. The ongoing, predictable nature of this obligation therefore creates the need for an administrative scheme to process claims and pay out benefits, whether those benefits are received by beneficiaries in a lump sum or on a periodic basis."). We therefore conclude that despite the company's limited right of termination, the ITTSESPP is reasonably perceived as an ongoing benefits commitment.

Our conclusion that ERISA applies is bolstered by consideration of the remaining *Schonholz* factors, since the ITTSESPP clearly contemplates application of significant managerial discretion, and case-by-case analysis of each termination, by ITT/Sheraton. Of direct relevance to Tischmann's case, ITT/Sheraton is required under the plan to examine the circumstances of each covered employee's termination and to determine whether it was "for cause"; if so, the employee is rendered ineligible for benefits.[3] *Cf.*

*Schonholz*, 87 F.3d at 76 (noting that the employer was required to determine, *inter alia*, "whether the employee was involuntarily terminated, and thus qualified for the Severance Plan [and] whether the termination was for either illegal conduct or substantially deficient performance."); *Simas*, 6 F.3d at 853 (concluding that an ERISA plan had been created based in part on the necessity of determining whether eligible employees had been discharged "for cause".).

In addition, under ¶ 9 of the plan, referred to above, ITT/Sheraton is not obliged to continue providing benefits if an employee receiving benefits:

(i) engages in any activity which is inimical to the best interests of the Company; (ii) disparages the Company; (iii) fails to comply with any Company Covenant Against Disclosure and Assignment of Rights to Intellectual Property; (iv) without ITT's prior consent, induces any employees of the Company to leave their Company employment; (v) without ITT's prior consent, engages in, becomes affiliated with, or becomes employed by any business competitive with the Company; or (vi) fails to comply with applicable provisions of the ITT Code of Conduct or applicable ITT Subsidiary Code or policies....

Similarly, pursuant to ¶ 5 of the plan, quoted above, a recipient of benefits is required "to be available" to render services to ITT/Sheraton. In order to invoke this provision, ITT/Sheraton would have to determine what constitutes "reasonable assistance, consistent with the level of the Executive's prior position" and would also have to "take into account any other commitments which the Executive may have." By its terms, then, the plan's benefits structure incorporates numerous context-sensitive judgments, requiring managerial discretion on a continuing, individualized basis.

■ We agree with Magistrate Judge Dolinger's determination that the ITTSESPP is

---

3. Under the plan an employee also becomes ineligible for benefits if the subsidiary or division of the company for which he works is divested or sold and he either accepts employment with the

purchaser or "refuses employment ... with the purchaser on terms and conditions substantially comparable to those in effect immediately preceding the sale or divestiture."

an employee benefit plan within the meaning of ERISA.[4]

## II. *Entitlement to jury trial*

■ Tischmann argues that, even if ERISA governed his claim for severance benefits, he was entitled to a jury trial. This contention is without merit. In *Sullivan v. LTV Aerospace and Defense Co.*, 82 F.3d 1251, 1258–59 (2d Cir.1996) we held that "there is no right to a jury trial in a suit brought to recover ERISA benefits." Tischmann argues that in *Schonholz*, decided shortly after *Sullivan*, a panel of this Court seemed to contemplate that, on remand, the plaintiff's claim for ERISA benefits would be tried to a jury. *See Schonholz*, 87 F.3d at 79–80. The *Schonholz* passages are clearly dicta. Moreover, in *DeFelice v. American Int'l Life Assurance Co. of New York*, 112 F.3d 61, 64 (2d Cir.1997), we reaffirmed that "*Sullivan* made clear that cases involving ERISA benefits are inherently equitable in nature, not contractual, and that no right to jury trial attaches to such claims." Accordingly, Tischmann was not entitled to jury trial.[5]

## CONCLUSION

The judgment is affirmed.

4. In his reply brief to this court, Tischmann points out that ITTSESPP benefits are funded through ITT/Sheraton's general assets, and that in *Dillingham*, the Supreme Court stated that "an employee benefit program not funded through a separate fund is not an ERISA plan." 519 U.S. at ——, 117 S.Ct. at 838. *But see Fort Halifax*, 482 U.S. at 7 n. 5, 107 S.Ct. at 2215 n. 5 ("Section 1002(1)(B) has been construed to include severance benefits paid out of general assets, as well as out of a trust fund.")(citing, *inter alia*, *Gilbert v. Burlington Indus., Inc.*, 765 F.2d 320 (2d Cir.1985), *aff'd mem.*, 477 U.S. 901, 106 S.Ct. 3267, 91 L.Ed.2d 558 (1986)); *id.* at 17, 107 S.Ct. 2211 482 U.S. at 16–18, 107 S.Ct. at 2220 (noting that "cases hold[ing] that a plan that pays severance benefits out of general assets is an ERISA plan" are "completely consistent with our analysis"). Because Tischmann did not raise the argument regarding the funding status of the plan until his reply brief, we consider it waived. *See United States v. Gabriel*, 125 F.3d 89, 100 n. 6 (2d Cir.1997)(finding an argument raised for the first time in reply brief to be waived); *Warner v. Orange County Dep't of Probation*, 115 F.3d 1068, 1071 n. 1 (2d Cir. 1996)(same; appellant's "failure to raise the issue on appeal in its initial brief deprived [appellee] of the opportunity to dispute the question and deprived the court of the benefit of both sides' briefing."), *vacated on other grounds*, 115 F.3d at 1082.

5. Given our disposition, we need not address the arguments raised by ITT/Sheraton on its cross-appeal.