John SALVADOR, Jr. & Kathleen A.
Salvador, Plaintiffs–Appellants,

v.

ADIRONDACK PARK AGENCY OF
THE STATE OF NEW YORK, et
al., Defendants–Appellees.

Docket No. 01–7539.

United States Court of Appeals,
Second Circuit.

April 26, 2002.

Madeline Sheila Galvin, Delmar, NY, for Plaintiffs–Appellants.

Lawrence A. Rappoport (Peter H. Schiff and Lisa M. Burianek, of counsel), for Eliot Spitzer, Attorney General of the State of New York, Albany, NY, for all Defendants–Appellees except Martin Auffredou.

Richard J. Bartlett, Glen Falls, NY, for Defendant–Appellee Martin Auffredou.

Present MESKILL, SACK, and BRIGHT,* Circuit Judges.

## SUMMARY ORDER

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of March 28, 2001 be, and it hereby is, AFFIRMED.

John and Kathleen Salvador appeal a March 28, 2001 memorandum decision and order granting the defendants' motion for judgment on the pleadings under Fed. R.Civ.P. 12(c). The Salvadors, residents of Queensbury in Warren County, New York, have operated a commercial marina on Lake George since the 1970s. The instant dispute concerns the Salvadors' attempt to obtain a permit for their marina, and their construction of what they assert would be a handicap and emergency access ramp. Alleging violations of several constitutional and statutory provisions, *inter alia* the Due Process and Equal Protection Clauses of the Fourteenth Amendment and the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), the plaintiffs filed suit under 42 U.S.C. § 1983 against numerous defendants. The plaintiffs' amended complaint enumerates fourteen claims. We affirm the district court's dismissal because none of the Salvadors' claims have merit and, additionally, all the state defendants are entitled to sovereign immunity under the Eleventh Amendment.[1]

### I. Standing

As a threshold matter, a plaintiff, in order to have standing to bring suit, must suffer "actual or threatened injury." *Brody v. Vill. of Port Chester*, 261 F.3d 288, 290 (2d Cir.2001). The defendants contend that plaintiffs cannot meet this requirement because no official action has occurred. Reading the complaint in the light most favorable to the plaintiffs, there may be a constitutionally cognizable injury in the alleged deprivation of their 1982 permit for a marina.

### II. Sovereign Immunity

"While the [Eleventh] Amendment by its terms does not bar suits against a State by its own citizens, [the Supreme] Court has

---

* The Honorable Myron H. Bright, Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

1. We note that the plaintiffs do not address the behavior of the Adirondack Park Agency of the State of New York, the New York State Department of Transportation, the Town of Queensbury, the Lake George Association, Inc., the Department of the Army Corps of Engineers, the Lake George Park Trust Fund, or Carl H. McCall in their briefs. All claims against the foregoing defendants are therefore also dismissed. *Reg'l Econ. Cmty. Action Program v. City of Middletown*, 281 F.3d 333, 343 n. 1 (2d Cir.2002).

consistently held that an unconsenting State is immune from suit brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan,* 415 U.S. 651, 662–63, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). The Eleventh Amendment's bar does not merely prohibit suits that contain a state in the caption; rather, "the nature of a suit as one against the state is to be determined by the essential nature and effect of the proceeding." *Ford Motor Co. v. Dep't of Treasury,* 323 U.S. 459, 464, 65 S.Ct. 347, 89 L.Ed. 389 (1945). "[W]hen the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants." *Id.* An award of damages here would forestall enforcement of New York's environmental management rules by the Lake George Park Commission ("the Commission"). For this reason alone, suits against the institutional defendants and the individual defendants in their official capacities fail.

▆▆▆ All the institutional defendants and the individual defendants acting in their official capacities have sovereign immunity under our traditional analysis.[2] We have elaborated a six-part test for determining whether a state entity is entitled to Eleventh Amendment sovereign immunity: "(1) how the entity is referred to in its documents of origin; (2) how the governing members of the entity are appointed; (3) how the entity is funded; (4) whether the entity's function is traditionally one of state or local government; (5) whether the state has a veto power over the entity's actions; and (6) whether the entity's financial obligations are binding upon the state." *McGinty v. New York,* 251 F.3d 84, 95–96 (2d Cir.2001).

▆▆▆ As a threshold matter, New York's Department of Environmental Conservation has been determined to be a state entity. *Baker v. Dep't of Envtl. Conservation,* 634 F.Supp. 1460, 1462–63 (N.D.N.Y.1986). Moreover, the plaintiffs' argument that the Commission is not an arm of the state, which is contained in their reply brief, would ordinarily be considered untimely. *Tischmann v. ITT/Sheraton Corp.,* 145 F.3d 561, 568 n. 4 (2d Cir.1998). We need not decide if an Eleventh Amendment argument can be waived, however, because the plaintiffs' argument lacks merit. Because "[m]oneys appropriated for the use of the commission by the state [are] paid out of the state treasury," N.Y. Envtl. Conserv. § 43–0109, a judgment against the Commission is "in essence one for the recovery of money from the state." *Ford Motor Co.,* 323 U.S. at 464, 65 S.Ct. 347. The remainder of the *McGinty* factors also counsel in favor of sovereign immunity.

Finally, "suit[s] against state officials that [are] in fact … suit[s] against a State [are] barred [under the Eleventh Amendment] regardless of whether [they] seek[ ] damages or injunctive relief." *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 102, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). All of the claims against the individual defendants in their official capacities are in consequence barred by sovereign immunity.

---

2. The plaintiffs argue that the defendant Auffredou does not benefit from sovereign immunity because he is an independent contractor. This argument, raised only in a reply brief (and then only obliquely), is not properly presented and we decline to address it. *See* *Tischmann v. ITT/Sheraton Corp.,* 145 F.3d 561, 568 n. 4 (2d Cir.1998). We note that because none of the Salvadors' substantive allegations withstand analysis, their claims would fail regardless of the availability of sovereign immunity.

In sum, there is no reason to disturb the district court's findings on sovereign immunity because all of the institutional defendants and the individual defendants in their official capacities are entitled to it.

### III.  Qualified Immunity

We turn now to the claims against the individual defendants in their individual capacities.  "A government actor performing a discretionary task is entitled to [qualified] immunity from § 1983 suits if either (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law."  *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 250 (2d Cir.2001) (internal citations and quotation marks omitted).  We first determine whether the plaintiff has alleged an actual deprivation of a constitutional right.  *See Wilson v. Layne*, 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999).

We note initially that courts cannot accept " 'legal conclusions,' 'unsupported conclusions,' 'unwarranted inferences,' 'unwarranted deductions,' 'footless conclusions of law,' or 'sweeping legal conclusions cast in the form of factual allegations.' " 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (2d ed.1990).  Second, we note the extraordinary prolixity of the plaintiffs' complaint,[3] which requires us to engage in substantial interpolation in an attempt to understand just what rights of the plaintiffs they assert have been violated.  Reviewing each perceived claim in turn, we conclude that none of the plaintiffs' claims have merit.  On this ground, we affirm the district court's disposition of the case.

#### a.  Equal Protection

First, the plaintiffs contend that in managing the marina permit application process, the Commission applied different rules to them in comparison with other similarly situated applicants.  Without the presence of a suspect class or fundamental right, "[t]he general rule is that legislation is presumed to be valid [under equal protection analysis] and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest."  *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 440, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985).  For the plaintiffs to allege successfully an equal protection violation in their regulatory treatment by the Commission, they must plead facts that, if proven, would establish that they " 'compared with others similarly situated, w[ere] selectively treated.' " *Zahra v. Town of Southold*, 48 F.3d 674, 683 (2d Cir.1995) (quoting *FSK Drug Corp. v. Perales*, 960 F.2d 6, 10 (2d Cir.1992)).

The plaintiffs fail to allege that similarly situated applicants were treated differently than they were in anything other than conclusory statements.  Rather, the plaintiffs assert that they behaved differently from other applicants, and were as a consequence treated differently.  The plaintiffs do not contest that they submitted, and then withdrew, an application for a Class A marina permit.  Although they allege that their application received discussion and attention unlike any other, they do not allege that any other applicant withdrew a pending application.  Rather, the amended complaint alleges only that another application was accepted, even though it was incomplete, and in violation

---

**3.**  The amended complaint covers 123 pages and contains 754 numbered paragraphs of allegations.  *Cf.* Fed.R.Civ.P. 8(a) ("A pleading which sets forth a claim for relief ... shall contain ... (2) a *short* and *plain* statement of the claim showing that the pleader is entitled to relief ....") (emphases added).

of Queensbury town ordinances. But the Salvadors' application was not rejected for incompleteness or for violation of town ordinances. Hence, even were these assertions to be proven true, the plaintiffs would not have identified a similarly situated applicant. The plaintiffs' remaining allegations relating to the equal protection claim are equally conclusory and therefore must all be rejected.

### b. Procedural Due Process

■ To succeed on a procedural due process claim, a plaintiff "must first establish a valid property interest within the meaning of the Constitution," and second "demonstrate that the defendant acted in an arbitrary or irrational manner in depriving him [or her] of that property interest." *Crowley v. Courville*, 76 F.3d 47, 52 (2d Cir.1996). For two reasons, the plaintiffs have not established a property interest. First, despite counsel's contrary assertion at oral argument, the permit on its face expired on December 31, 1989.

Second, the plaintiffs have conceded that they had only a permit. As a matter of New York law, a permit creates no property right. In *New York State Trawlers Association v. Jorling*, 16 F.3d 1303, 1306 (2d Cir.1994) (*"Trawlers Association"*), this Court addressed the abrogation of a permit system for lobster fishing in New York. *Trawlers Association* described the permit system as a "licensing scheme[ ]" and went on to discuss the permits as "licenses." *Id.* at 1311. Licenses can be altered or eliminated "so long as the alteration (or elimination) is rationally related to a legitimate state interest." *Id.* Here, there is nothing to suggest that the change in permit regulation effected by the Commission is anything but rational. Even if the permit had not on its face expired, the state could abrogate it without violating the Salvadors' due process rights.

### c. *Ex Post Facto* Regulation

■ A two-part test is used to determine whether a law triggers *ex post facto* concerns. First, whether the legislature intended the statute to be criminal or civil; and second, if the intent was nonpunitive, whether the statute is so punitive in fact that it cannot be legitimately seen as civil in nature. *Doe v. Pataki*, 120 F.3d 1263, 1272–74 (2d Cir.1997). The plaintiffs do not (and could not reasonably) allege that marina regulations promulgated by the Commission are criminal. Nothing alleged in the complaint even hints that marina regulations are "so punitive either in purpose or effect" as to trigger *ex post facto* concern. *Id.* at 1274 (internal citation and quotation marks omitted).

### d. Retaliation for First Amendment Activity

■ A retaliation claim under the First Amendment requires a showing "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Garcia v. S.U.N.Y. Health Sci. Ctr. of Brooklyn*, 280 F.3d 98, 106–07 (2d Cir. 2001) (internal citation and quotation marks omitted). Dismissal of a retaliation claim on the pleadings is not warranted " 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Dangler v. N.Y. City Off Track Betting Corp.*, 193 F.3d 130, 138 (2d Cir. 1999) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

■ The plaintiffs' complaint, however, does not allege any of the three elements of a retaliation action. First, the plaintiffs do not state what protected activity they

undertook. Although they allegedly "challeng[ed] actions taken against them by [state officials] in several legal forums including but not limited to New York State Supreme Court and [the Commission]," there is no elaboration of this conclusory and generic statement. We reject as untimely plaintiffs' counsel's suggestion in oral argument that the instant federal court action was the basis for the retaliation.

Second, the plaintiffs fail to specify what retaliatory act was taken against them. Although some of the defendants' actions alleged in the complaint may constitute retaliation in some circumstances, the plaintiffs fail to give notice that their claim rests on such acts. Thus, the plaintiffs allegations of retaliation are too insubstantial to survive even a Rule 12(c) motion. Finally, the plaintiffs' complaint contains no sufficient allegation of a causal connection.

### e. Defamation

■ The plaintiffs allege being "slandered, defamed and attacked in litigation" by the defendants. A claim of governmental defamation under the Due Process Clause comprises:

> (1) the utterance of a statement about him or her that is sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false, and (2) some tangible and material state-imposed burden or alteration of his or her status or of a right in addition to the stigmatizing statement.

■ *Doe v. Dep't of Pub. Safety*, 271 F.3d 38, 47 (2d Cir.2001). For two reasons, the defamation claim founders. First, accepting *arguendo* that an allegation of regulatory violations constitutes an injury to reputation, the plaintiff has not alleged any tangible and material state-

imposed burden to satisfy the second part of the test. Second, "no due process violation occur[s when the plaintiff is] offered the opportunity for a 'name-clearing hearing.'" *Komlosi v. N.Y. State Office of Mental Retardation & Developmental Disabilities*, 64 F.3d 810, 817 (2d Cir.1995) (citation omitted). In the instant case, the ongoing state court proceedings constitute this opportunity.

### f. ADA Violations

■ The plaintiffs contend that they alleged a claim under the ADA in their amended complaint. The district court "note[d] that Plaintiffs' Thirteenth Cause of Action, while rather lengthy, fails to allege any cause of action clearly." Chief Judge Scullin further questioned whether the claim "is sufficiently pled to meet even the lenient [pleading] requirements of [Fed.R.Civ.P. 8]."

The district court correctly concluded that the plaintiffs fail to state a claim under the ADA. The plaintiffs' complaint makes only fleeting reference to the ADA. It states that their attempts to construct a "Handicap and Emergency Access facility" followed from their attempt "to comply with the Americans with Disabilities Act." They do not however allege that the defendants acted against them because of *their* handicap or a handicap that one of either their guests, customers, or employees have. Their complaint simply fails to allege discrimination. Indeed, while the plaintiffs "[i]n the past ... have had both employees and guests with physical handicaps," nowhere in the complaint is it alleged that the plaintiffs either currently employ or otherwise deal with handicapped persons. In short, nothing in the complaint gives the defendants "fair notice of the basis for petitioner's [ADA] claim[ ]." *Swierkiewicz v. Sorema N.A.*, 534 U.S.

**14**

506, 534 U.S. 506, 122 S.Ct. 992, 999, 152 L.Ed.2d 1 (2002).

### g. The Dormant Commerce Clause

■ The Salvadors allege that the defendants' selective enforcement of zoning ordinances violated the dormant Commerce Clause by burdening interstate commerce. In a dormant Commerce Clause analysis, "a court must determine whether a state or local government is regulating and, if so, whether that regulation affects interstate commerce.... [I]t must next determine whether the regulation discriminates against interstate commerce or regulates even-handedly with incidental effects on interstate commerce." *United Haulers Ass'n, Inc. v. Oneida–Herkimer Solid Waste Mgmt. Auth.,* 261 F.3d 245, 254–55 (2d Cir.2001) (internal quotation marks and citations omitted). Absent discrimination, a law "will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *Id.* at 256 (internal quotation marks and citations omitted). Because the plaintiffs allege nothing that could constitute interstate discrimination or protectionism, their Commerce Clause claim lacks merit.

### h. The Antitrust Claim

■ Finally, the plaintiffs make no mention of an antitrust action in their complaint, and so waived it. "Having failed to make the present argument to the district court, plaintiff[s] will not be heard to advance it here." *Gurary v. Winehouse,* 190 F.3d 37, 44 (2d Cir.1999).

### i. Conclusions

None of the plaintiffs' claims survive even the mildest scrutiny. For this reason, we dismiss them without proceeding further in the qualified immunity analysis.

For the foregoing reasons, the judgment of the District Court is hereby AFFIRMED.