13-3928-cv
Okun v. Montefiore Medical Center

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

August Term, 2014

(Submitted: May 4, 2015        Decided: July 17, 2015)

Docket No. 13-3928-cv

_____

ALEXANDER OKUN, MD,

*Plaintiff-Appellant*,

v.

MONTEFIORE MEDICAL CENTER,

*Defendant-Appellee*.[*]

_____

Before:

WALKER, LYNCH, and LOHIER, *Circuit Judges*.

Alexander Okun appeals from a judgment of the United States District Court for the Southern District of New York (Gardephe, *J*.) dismissing his complaint for lack of subject matter jurisdiction. Suing under the Employee Retirement Income Security Act (ERISA), Okun claimed that his employer denied him severance benefits owed under an "employee welfare benefit plan." The District Court held that it lacked jurisdiction because the severance policy did not constitute a "plan" under ERISA. Because Okun adequately alleged that the severance policy was an ERISA "plan," we VACATE and REMAND.

---

[*] The Clerk of Court is directed to amend the caption as set forth above.

Gail I. Auster, Law Offices of Gail I. Auster & Associates P.C., New York, NY, *for* Plaintiff-Appellant.

Jean L. Schmidt, Deidre A. Grossman, Littler Mendelson, P.C., New York, NY, *for* Defendant-Appellee.

LOHIER, <u>Circuit Judge</u>:

Alexander Okun, a physician, appeals from a judgment of the United States District Court for the Southern District of New York (Gardephe, <u>J.</u>) dismissing his complaint against his employer, Montefiore Medical Center ("Montefiore"), and others. Okun alleged that Montefiore denied him severance benefits in violation of the Employee Retirement Income Security Act of 1974 (ERISA), Pub. L. No. 93-406, 88 Stat. 829. Montefiore moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(1), arguing that the court lacked subject matter jurisdiction because Montefiore's severance policy was not an "employee welfare benefit plan" under ERISA. The District Court dismissed the complaint for lack of jurisdiction. Because

we conclude that, on the facts alleged in the complaint, the severance policy was a "plan" governed by ERISA, we vacate and remand.[1]

**BACKGROUND**

The following facts are taken from the complaint or from documents integral to it.

I.  Montefiore's Severance Policy

The Montefiore severance policy at issue, number II-17a (the "Policy"), provides that all full-time physicians "employed before August 1, 1996 who [are] terminated for other than cause" are entitled to either twelve months' notice or six months' severance pay.  Eligible employees with more than fifteen years' service are also "entitled to automatic review of the amount of severance pay by the President of the Medical Center."

Montefiore has maintained a severance policy since 1987, and the Policy itself has been in place, without revision, since 1996.  The Policy explicitly notes that it "may be changed, modified or discontinued at any time

---

[1] We need not and do not reach the question whether the failure to allege an ERISA-governed "plan" constitutes a failure to allege federal subject matter jurisdiction or simply a failure to state a claim.

by the Medical Center's Senior Vice President of Human Resources, or designee, with or without notice."

II. Okun's Termination

For twenty-three years, from 1988 until 2011, Okun worked as a pediatrician and professor at Montefiore Medical Center's Albert Einstein College of Medicine. On May 1, 2011, Okun notified his supervisor that he would leave Montefiore in September 2011 to take a job elsewhere. On May 11, 2011, Okun attended a meeting with a guest speaker. Afterwards, Okun's supervisor chastised him for the comments he made in front of the guest speaker. On May 13, 2011, Okun was fired "for cause," purportedly because of what he said at the meeting.

Okun then filed this action alleging that his for-cause termination was a pretext for Montefiore to interfere with his right to severance payments under the Policy and ERISA.

**DISCUSSION**

I. Employee Welfare Benefit Plans Under ERISA

ERISA defines "employee welfare benefit plan" to mean:

> any plan, fund, or program . . . established or maintained by an employer or by an employee

4

organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries . . . benefits in the event of sickness, accident, disability, death or unemployment, or . . . any benefit described in section 186(c) of this title.

29 U.S.C. § 1002(1). On appeal, the parties dispute only whether the Policy is adequately alleged to constitute the kind of undertaking to pay severance benefits that can be described as a "plan, fund, or program," as that phrase is used in the definition of "employee welfare benefit plan."

To resolve that dispute, we look first to ERISA's text. Of particular importance here, ERISA provides that "<u>any</u> plan, fund, or program" maintained by an employer to pay certain benefits will suffice. <u>Id.</u> (emphasis added). Use of the word "any" and inclusion of three undefined, overlapping descriptors (plans, funds, and programs) suggests that Congress intended the definition of "employee welfare benefit plan" to be broad and independent of the specific form of the plan. <u>Cf.</u> <u>Anderson v. UNUM Provident Corp.</u>, 369 F.3d 1257, 1263 (11th Cir. 2004) (noting the "broad terms" of the definition). For this reason, "[t]he term 'employee welfare benefit plan' has been held to apply to most . . . employer undertakings or obligations to pay severance benefits." <u>Schonholz v. Long Island Jewish Med. Ctr.</u>, 87 F.3d 72, 75 (2d Cir.

5

1996); see also Tischmann v. ITT/Sheraton Corp., 145 F.3d 561, 565 (2d Cir. 1998).

But not all such undertakings constitute a plan. Tischmann, 145 F.3d at 565; Schonholz, 87 F.3d at 75. In Fort Halifax Packing Co. v. Coyne, 482 U.S. 1 (1987), for example, the Supreme Court held that a Maine statute "requiring employers to provide a one-time severance payment to employees in the event of a plant closing," id. at 3, "neither establishe[d], nor require[d] an employer to maintain, an employee welfare benefit 'plan,'" id. at 6. Relying on Fort Halifax, we determined that a similar one-time employer promise to provide sixty days' pay to employees discharged in a "plant closing" was not an employee welfare benefit plan. See James v. Fleet/Norstar Fin. Grp., Inc., 992 F.2d 463, 464-66 (2d Cir. 1993).

Both Fort Halifax and James relied on the absence of an "ongoing administrative program." Fort Halifax, 482 U.S. at 12; accord James, 992 F.2d at 467. This is partly because, without an ongoing administrative program or scheme, the promise to make a "one-time, lump-sum payment triggered by a single event" will rarely if ever implicate the need for uniformity that Congress sought when it included within ERISA a provision that preempted

state laws relating to benefit plans. Fort Halifax, 482 U.S. at 12; see also 29 U.S.C. § 1144(a).

Since Fort Halifax, we have identified three non-exclusive factors to help determine whether an employer's particular undertaking involves the kind of ongoing administrative scheme inherent in a "plan, fund, or program":

> (1) whether the employer's undertaking or obligation requires managerial discretion in its administration; (2) whether a reasonable employee would perceive an ongoing commitment by the employer to provide employee benefits; and (3) whether the employer was required to analyze the circumstances of each employee's termination separately in light of certain criteria.

Tischmann, 145 F.3d at 566 (quoting Schonholz, 87 F.3d at 76) (quotation marks omitted). To be clear, there is no separate statutory requirement in § 1002(1) that ERISA plans involve long-term commitments or include discretionary determinations. But these factors are useful analytic tools to the extent that they help us decide the ultimate question of whether a particular undertaking or obligation is a "plan, fund, or program."

## II. Montefiore's Policy Under ERISA

We conclude that, on the facts alleged in the complaint, the Policy involves the kind of undertaking that falls within the meaning of the phrase "any plan, fund, or program." The Policy represents a multi-decade commitment to provide severance benefits to a broad class of employees under a wide variety of circumstances and requires an individualized review whenever certain covered employees are terminated. As a result, Montefiore assumed the "responsibility to pay benefits on a regular basis, and thus faces . . . periodic demands on its assets" that require long-term coordination and control. Fort Halifax, 482 U.S. at 12.

A brief consideration of the pertinent Schonholz factors confirms this conclusion.

First, the Policy requires discretion and individualized evaluation to administer. In particular, Montefiore must determine whether an employee left voluntarily or was terminated; it must determine whether the termination was "for cause" or for one of the other reasons listed in the Policy[2]; and the

---

[2] At least on the facts alleged here, we do not agree that a determination as to whether a termination was "for cause" requires only a "minimal quantum of discretion" insufficient to raise a policy to the level of an ERISA plan.

President of Montefiore is required to engage in a discretionary review of the amount of severance benefits whenever an employee with fifteen or more years of service requests it.[3]

Second, Montefiore has maintained a severance policy in one form or another since 1987 and has retained the Policy in its current form since 1996. At the motion to dismiss stage, we think it plausible that such a longstanding policy would give employees the reasonable impression that Montefiore has undertaken an "ongoing commitment" to provide severance benefits. Montefiore points out that the Policy's boilerplate language reserves Montefiore's unilateral right to modify the Policy without notice. But many ERISA-governed plans contain such a reservation, cf. Reichelt v. Emhart Corp., 921 F.2d 425, 430 (2d Cir. 1990) (noting that "under ERISA, the

---

Compare Velarde v. PACE Membership Warehouse, Inc., 105 F.3d 1313, 1317 (9th Cir. 1997).

[3] Montefiore notes that Okun did not cite the President's discretionary review in his opening brief on appeal in support of his argument that the plan requires managerial discretion and individualized evaluation. See Appellee Br. 13 n.2. We retain broad discretion to address that argument, however, particularly since it was raised and briefed before the District Court, which addressed the argument in its opinion. See Okun v. Montefiore Med. Ctr., 970 F. Supp. 2d 267, 275 (S.D.N.Y. 2013). Moreover, Okun's opening brief described the automatic review provision, see Appellant Br. 11, and his reply brief augmented the argument, see Appellant Reply Br. 5.

employer has the right at any time to amend or terminate a severance pay plan"), and we have held that a similar provision does not necessarily defeat an employee's reasonable perception of an ongoing commitment, see Tischmann, 145 F.3d at 566. A reasonable employee could infer from the fact that Montefiore has not exercised its right to modify the Policy since 1996 that Montefiore does not take its promise to pay severance benefits lightly. We note, too, that Montefiore's obligations pursuant to its longstanding policy contrast sharply with the employer's obligations in James and Fort Halifax, which involved only a one-time payment in the event of a contingency that was unlikely to recur on a regular basis. Compare Joint App'x 16-17, with Fort Halifax, 482 U.S. at 11-12, and James, 992 F.2d at 466. Here, Montefiore has undertaken to pay severance every time an eligible employee is terminated for reasons other than cause — a contingency that reasonably can be inferred to occur on a relatively regular basis.

As for the third factor, it is true that the Policy leaves somewhat less room for managerial discretion than other policies that we have held constitute plans under ERISA. See Tischmann, 145 F.3d at 567; Schonholz, 87 F.3d at 76. But there remains some managerial discretion in the President's

review of the amount of severance and in the classification of the termination of each eligible employee as for or without cause, and here that is enough.

Our conclusion also coheres with the purpose of ERISA's preemption provision. The duration of Montefiore's commitment and the individualized, frequently recurring review contemplated by that commitment implicate the type of administrative concerns that are best "governed by a single set of regulations" rather than "a patchwork scheme of regulation." Fort Halifax, 482 U.S. at 11-12. For example, absent ERISA preemption of a plan such as this one, under circumstances in which an employer operates in multiple States, the different States might define termination "for cause" differently, or might impose different constraints on the discretion an employer can exercise in reviewing the amount of severance due to long-time employees.

## CONCLUSION

We have considered Montefiore's remaining arguments and conclude that they are without merit. For the reasons set forth above, we conclude that, on the facts alleged in the complaint, the Policy constitutes a "plan, fund, or program" under § 1002(1) of ERISA. We therefore VACATE the judgment of the District Court and REMAND.